## No. 15,559.

People ex rel. Simon, District Attorney *v.*
Anderson et al.
Mr. Gail L. Ireland, Attorney General, Intervener.
(151 P. [2d] 972)

Decided September 19, 1944.

Mr. Richard H. Simon, Mr. Charles L. Harrison, for relator.

Mr. Malcolm Lindsey, Mr. Glenn G. Saunders, Mr. Carl C. Hearnsberger, for respondents.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. E. B. Evans, Assistant, for intervener.

*En Banc.*

Mr. Chief Justice Young delivered the opinion of the court.

The matter before the court is an original proceeding in quo warranto upon relation of Richard H. Simon, as district attorney of the First Judicial District of the State of Colorado, the respondents being Clarence R. Anderson, Bert M. Keating and Paul F. Perske, as members constituting the Election Commission of the City and County of Denver, and Sue F. Cassius, Ellen L. Ellis and Edith Cathern Schmutz, as members constituting a purported Board of Registration and Judges of Election of a purported election precinct designated P-16, and the City and County of Denver.

A rule to show cause was issued. Respondents filed an answer and relators filed a reply. All parties being in accord that the matter is one of public importance, due to the immediate necessity of the State Canvassing

Board's being advised of its outcome in order properly to canvass the votes cast at the recent primary election, stipulated that the cause might be set for oral argument before the court without filing briefs, and all parties who might be adversely affected by the court's ruling waived the right to file a petition for rehearing in order that the judgment might become final when rendered.

The constitutionality of an ordinance of the City and County of Denver being involved, the Attorney General intervened on behalf of the state, but has filed no pleading. He merely urges a speedy disposition of the case due to its public importance.

The issue arises out of the following fact situation: The City and County of Denver, acting pursuant to section 291, chapter 163, '35 C.S.A., regularly passed an ordinance, numbered 60, series of 1943, entitled, "A Bill for an ordinance relating to the annexation of part of section 17, township 4 south, range 68 west of the sixth principal meridian, sometimes known as 'Mountain View Park,' to the City and County of Denver."

The pertinent part of the ordinance is as follows:

"Section 1. A map or plat of a portion of Section 17, Township 4 South, Range 68 West of the Sixth Principal Meridian, designating said mapped portion as 'Mountain View Park,' has been submitted to this Council and it is hereby found, declared, and determined that the same complies with Section 291 of Chapter 163, '35 C.S.A., so as to warrant acceptance and approval thereof by this Council, and the same is hereby accepted and approved and the land therein described shall be and become a part of the City and County of Denver upon the making of the filings provided for in said Section 291.

"Section 2. The proper officers of the City and County of Denver are hereby authorized and directed to do all things necessary to complete the annexation to the City and County of Denver 'Mountain View Park'."

The pleadings clearly disclose that if the City and

County of Denver had the power to make the annexation under section 291, supra, the ordinance is sufficient and that the statutory prerequisites to effect an annexation were fulfilled.

The sole question raised by the pleadings is one of law. The territory sought to be annexed lies in Arapahoe county. It is contiguous to the City and County of Denver. Assuming lawful authority to do so, the City and County of Denver regularly created out of the territory described an election precinct designated as election precinct P-16 and regularly designated as election officials for the precinct those so named as respondents in this action whose authority so to act is questioned in this proceeding. Assuming lawful authority so to do, Arapahoe county had regularly created an election precinct out of the same territory designating it as election precinct No. 19, and had regularly appointed election officials for said precinct. The primary election having occurred while this cause was pending here and undetermined, it now appears that the citizens of the territory, or at least part of them, finding two polling places, availed themselves of the opportunity of voting twice in order that they might not lose their votes, not knowing in which of the places they were lawfully entitled to cast their ballots. The relator charges that the precinct officials appointed by the election commission of the City and County of Denver in opening a polling place within the territory did so without any warrant or authority in law. Whether they did so act, is the direct issue raised in this proceeding. Its determination depends upon whether the action of the city pursuant to section 291, supra, lawfully accomplished an annexation of the territory to the City and County of Denver and a detachment of the same from the county of Arapahoe. In our opinion, such was its effect.

Relator, in support of his first ground of alleged invalidity of the ordinance, contends that section 291, supra, pursuant to which it was passed, makes the meth-

od therein provided available only to cities *"organized under this law,"* and to such cities only. Section 291, chapter 163, '35 C.S.A., originally was section 7, article II of an act entitled, "An Act in Relation to Municipal Corporation," approved April 4, 1877. Section 7 of the act of 1877 was amended in 1887 (Colorado Session Laws 1887, p. 432) but not in any respect material to Relator's contention. The words upon which Relator relies to exclude Denver from the operation of the statute as they appear in section 7 of the act of 1877 and in the amendment thereto of 1887 are, "Organized under this *Act."* Our former holdings as to the scope and purpose of the act of 1877 foreclose our placing the construction upon the section that Relator asserts is proper. Denver was incorporated in 1861 under a special territorial charter. *Cunningham v. Denver,* 23 Colo. 18, 45 Pac. 356. In *Leadville v. Coronado Mining Co.,* 29 Colo. 17, 67 Pac. 289, we held: "The act of 1877 appears to be a comprehensive act upon the subject of municipal corporations; it appears to cover the whole subject matter, and plainly shows an unmistakable intention on the part of the legislature to make the act of 1877 a substitute for the law of 1868." In 1877 Denver was operating under its territorial charter. Whether it continued to do so until it became a charter city under and by virtue of the Twentieth Amendment to the Constitution, or elected to organize under the Act of 1877, as section 87 thereof permitted it to do, is not material to the issues here for they arise after Denver was organized under the Twentieth Amendment and became a charter city. Its authority to annex territory must be determined under the present applicable law rather than that under which it was originally organized.

█ That authority can be conferred by the legislature on a city to annex territory in the manner provided in section 291, supra, is not here questioned. Whether the annexation statutes in force at the time of the adoption of the Twentieth Amendment were or were not

applicable to Denver as then organized, they became so upon adoption by that amendment. The next to the last paragraph of section 1 of article 20 is as follows: "The general annexation and consolidation statutes of the state shall apply to the City and County of Denver to the same extent and in the same manner that they would apply to the city of Denver if it were not merged, as in this amendment provided, into the City and County of Denver. Any contiguous town, city or territory hereafter annexed to or consolidated with the City and County of Denver, under any of the laws of this state, in whatsoever county the same may be at the time, shall be detached per se from such other county and become a municipal and territorial part of the City and County of Denver, together with all property thereunto belonging."

█ █ It should be observed that the general annexation and consolidation statutes of the state are specifically made to apply to the City and County of Denver without any limitation. That this is intended appears from the provision that they are to be effective to the same extent and in the same manner as if Denver were given only the character of a municipality rather than the dual character of a municipality and a county. This provision doubtless was placed in the amendment in order that it might be clear that it was intended that an annexation of territory to the City and County of Denver could be effected under section 291, supra, even if lying in another county, without a consenting vote of a majority of the electors in the county from which the territory is to be detached, as provided in sections 84 to 88, chapter 44, '35 C.S.A., and section 3, article 14, Constitution of Colorado. The Twentieth Amendment to the Constitution must be construed as modifying and limiting section 3, article 14 in so far as the proposed annexation of territory is to the City and County of Denver. Section 8 of the Twentieth Amendment specifically so provides: "Section 8. Anything in

the constitution of this state in conflict or inconsistent with the provisions of this amendment is hereby declared to be inapplicable to the matters and things by this amendment covered and provided for." The reason therefor is obvious, for since the City and County of Denver constitutes both a county and municipality, the growth of the municipality and the extension of its boundaries otherwise would be subject to the sufferance of the surrounding counties. The provisions of the Twentieth Amendment make it clear that any annexation under any of the general laws of this state (and section 291 supra, is and was at the time of the adoption of the amendment a general annexation statute of the state) operates, per se, as a detachment of the annexed territory from the county in which it lies. We so held in *Simon v. County of Arapahoe,* 80 Colo. 445, 252 Pac. 811.

■ The contention that the ordinance was void because the annexed territory had theretofore been platted as a subdivision of Arapahoe county and had not been vacated, is without merit. The allegations of respondents' answer and the attached plats show conclusively that in so far as the landowners within the annexed territory are concerned, the plat as made by the city, laying out blocks, streets, alleys and roads, coincides fully with the plat of the subdivision of Arapahoe county. If such be a re-platting of the land, it is in name only, and since the rights of landowners are in no wise changed or affected there was no need for a vacation or for a consent of the landowners that there be one.

The third alleged ground of invalidity, that the ordinance is void because it annexes territory to one county and detaches it from another without a consenting vote of the electors of the county from which it is detached, as allegedly required by section 3, article 14, of the Colorado Constitution, we have heretofore determined is without merit.

The objection that the annexation of territory in the manner here effected by the ordinance and acts done pursuant to section 291, supra, is repugnant to the Enabling Act under which Colorado was organized as a state in that it denies a republican form of government to the people unless the question of detaching the territory from Arapahoe county is first submitted to a vote of the electors of that county is not sound in law. The relator does not cite any authority sustaining the contention, nor was any argument advanced supporting it. We hold this objection also without merit.

Rule discharged.

Mr. Justice Bakke, Mr. Justice Knous, and Mr. Justice Goudy not participating.