The **TOWN OF SUPERIOR, Colorado; The Board of Trustees of the Town of Superior, Colorado; Ted T. Asti, in his official capacity as Mayor; and Della Gibson, Don Hooper, Rick Kupfner, Jerry McElroy, Lidia Holl, and Karen Klassen, all in their official capacity as members of the Board of Trustees, Petitioners,**

v.

The **MIDCITIES COMPANY, a Colorado general partnership, Respondent.**

No. 95SC687.

Supreme Court of Colorado,
En Banc.

March 17, 1997.

Dietze and Davis, P.C., Kathleen E. Haddock, Boulder, for Petitioners.

Karsh & Fulton, Professional Corporation, Seymour Joseph, Denver, for Respondent.

David W. Broadwell, Denver, for Amicus Curiae Colorado Municipal League.

Justice SCOTT delivered the Opinion of the Court.

■ Section 112 of the Municipal Annexation Act of 1965 (Annexation Act) makes it unlawful for a municipality to impose "additional terms and conditions" upon the annexation of a landowner's property, unless it obtains the landowner's approval. § 31–12–112(1), 12B C.R.S. (1986). We must decide in this case whether the Town of Superior (Superior) acted in excess of its authority or abused its discretion when it acted to annex a landowner's property contrary to a preannexation agreement in a particular consensual annexation.[1] The Boulder County District Court found there was an agreement between the landowner and Superior that an annexation agreement regarding land use and development was to be in place prior to the annexation of the undeveloped property. The court ruled that by acting to annex the property without the annexation agreement, Superior's annexation of the property was void. On appeal, the court of appeals held that Superior abused its discretion by annexing the landowner's property "without the annexation agreement that had been contemplated by the parties throughout the process." *Midcities Co. v. Town of Superior,* 916 P.2d 595, 597 (Colo.App.1995). Because annexation was conditioned by both parties on the completion of an annexation agreement, Superior's annexation of the property without such an agreement or without first obtaining the landowner's approval of the annexation violated section 31–12–112 of the Annexation Act. We therefore affirm the judgment of the court of appeals.

### I.

Petitioner, the Town of Superior, is a municipality located within Boulder County and north of Denver. Superior is governed by a Board of Trustees (Board). Respondent, Midcities Company, a Colorado general partnership, owns approximately 120 acres of undeveloped real property (Midcities Property) on the eastern border of Superior.

### A.

During the spring of 1993, Superior and Midcities Company entered into discussions and subsequently agreed that Superior would annex the Midcities Property. To aid the anticipated residential and commercial land development, Superior agreed that the annexation would be conditioned upon Superior and Midcities Company entering into an agreement regarding land development on the Midcities Property (the Annexation Agreement).[2] On June 1, 1993, Superior's attorney sent Midcities Company a letter and enclosed a copy of the annexation petition form "we use in Superior." The letter referred to the Annexation Agreement, stating it was "not required until the final annexation hearing."

---

1. In our order granting certiorari, we set forth the following issues: (1) Did the court of appeals err in holding that Superior's annexation of Midcities Company's property without an annexation agreement was void?; and (2) Did the court of appeals err in not remanding this case to the district court for a trial on the factual issues presented? By our holding today, we answer both questions in the negative.

2. As used in this opinion, the "Annexation Agreement" is the proposed land development agreement in the form drafted by Superior's attorney.

Two days later, on June 3, 1993, Midcities Company petitioned Superior to annex the Midcities Property.[3] At its June 14 meeting, the Board found the petition to be in substantial compliance with the requirements of the Annexation Act and scheduled a public hearing for July 26 to address the Midcities Company petition.

In anticipation of its annexation of the Midcities Property, Superior prepared an annexation impact report. Part II of the report states that the "Annexation Agreement will accompany the final petition hearing before the Town Board." On June 30, the town clerk filed the impact report with the clerk of the Boulder County Commissioners. The same day, in a letter addressed to the Superior town planner, the town attorney stated, "I hope to have a draft Annexation Agreement for consideration . . . this week."

The draft Annexation Agreement, prepared by the Superior town attorney, included provisions to "control the future development and use" of the Midcities Property. The Annexation Agreement addressed water, sanitary sewer and storm drainage, land dedications and donations, as well as existing uses.[4] In addition, the Annexation Agreement provided additional access to the Midcities Property through new and existing roads. On July 22, the Superior town staff prepared a memo for the Board in which the staff concluded that "[u]ntil the Annexation Agreement is finalized, staff recommends the Board of Trustees continue the public hearing" regarding the annexation of the Midcities Property.

The July 26, 1993, public hearing was held as scheduled. At the hearing, the Board was informed that upon annexation, the Midcities Property would be developed for single-family residential, multi-family residential, and commercial uses, and that the "Annexation Agreement . . . must be in place prior to the approval of any annexation ordinance." During the meeting, the town planner advised

the Board that "[d]iscussions with [Midcities Company] are continuing . . . and [that] until the Annexation Agreement is finalized, [the town] staff recommends the Board . . . continue the public hearing." Because the Annexation Agreement was not yet finalized, Midcities Company asked that the matter be tabled until a later date. The Board agreed and continued the hearing until August 23.

Further negotiations between Superior and Midcities Company, however, did not result in the execution of the Annexation Agreement. After further delays, on August 12, Midcities Company attempted to terminate the annexation proceedings and advised Superior that it was withdrawing its petition for annexation and that it planned to petition the City of Broomfield to annex the Midcities Property. In a letter response dated August 16, the town attorney advised Midcities Company that "[t]he law did not allow [Midcities Company] to withdraw [its] petition" without the Board's approval and that the Board would consider the withdrawal of Midcities Company's petition at its August 23 meeting.

At the August 23 meeting, the town attorney confirmed that Midcities Company asked to withdraw its petition and that, on August 17, Broomfield had accepted a petition to annex the Midcities Property. At that time, the Board went into executive session "to [obtain] legal advice" regarding Superior's annexation of the Midcities Property. After conferring with the town attorney, the Board, in effect, denied Midcities Company's request to withdraw its petition. The Board passed Resolution No. 93–R–21, adopting findings and conclusions based upon the July 26 hearing, and enacted Ordinance No. 93–0–11 to annex the Midcities Property. Through the ordinance, the Board directed the town clerk to "[f]ile one original of the Annexation Agreement." The Board's resolution, however, directed the clerk to delay

---

3. Midcities Company submitted two petitions, each describing a portion of the property. For purposes of the proceedings before us, we will treat both petitions together as a single petition, unless otherwise stated.

4. The record also reveals that Midcities Company paid Superior over $20,000 "to explore zoning, annexation and service matters" and expended additional money "for engineering, planning, legal and other services in connection with the proposed Superior Annexation."

filing the necessary documents for annexation to delay the effective date of its actions.

On August 31, Midcities Company asked the Board to reconsider its actions and to vacate its ordinance annexing the Midcities Property. On September 1, Broomfield filed a similar motion seeking Superior's reconsideration. On September 13, the Board adopted a new resolution and ordinance, finding that no annexation agreement was required and therefore no such document needed to be filed by the town clerk. On September 23, Midcities Company filed a second motion to reconsider. By letter dated October 8, Superior denied the motions of Midcities Company and Broomfield. Thereafter, Midcities Company sought judicial review of Superior's actions.

### B.

On October 22, 1993, Midcities Company filed a complaint in the trial court pursuant to section 31–12–116, 12B C.R.S. (1996 Supp.), of the Annexation Act and C.R.C.P. 106(a)(4). In its complaint, Midcities Company asked that the court: (1) declare the annexation void; (2) issue a declaratory judgment that Midcities Company had the right to withdraw its petition for annexation prior to Superior's adoption of the ordinances; and (3) enjoin the town of Superior from enforcing its annexation ordinance.

On October 26, 1994, the Boulder County District Court (trial court), the Honorable Roxanne Bailin presiding, issued a well reasoned ruling and order. The trial court found that "it [is] overwhelmingly clear that ... there was an agreement between [Midcities Company] and [Superior] that an annexation agreement was to be in place prior to the annexation." Concluding that Superior's actions to effect annexation without the Annexation Agreement constituted an abuse of discretion, the trial court ruled that the annexation was void. The trial court also concluded that Midcities Company could withdraw its petition.

On appeal, the court of appeals affirmed the trial court and held that Superior's annexation of the Midcities Property was void. *See Midcities*, 916 P.2d at 597. The court of appeals concluded that "[u]pon review of the record before the Board ... the trial court did not err in determining that [Superior] abused [its] discretion by annexing [Midcities] Property without [entering into] the Annexation Agreement that had been contemplated by the parties throughout the process." *Id.* Having affirmed the trial court's ruling on that issue, the court of appeals did not address the trial court's ruling that Midcities Company could withdraw its annexation petition. *Id.*

### II.

◼◼◼ Our review is controlled by the Annexation Act.[5] In construing its statutory provisions, we are to give effect to the intent of the General Assembly. *See Allstate Ins. Co. v. Smith*, 902 P.2d 1386, 1387 (Colo.1995). By doing so, we first look to the statutory language, giving words and phrases their commonly accepted and generally understood meaning. *Id.* at 1387; *Bertrand v. Board of County Comm'rs*, 872 P.2d 223, 228 (Colo. 1994). Where the language of a statute is plain and the meaning is clear, we need not resort to interpretive rules of statutory construction, but must apply the statute as written. *Id.*

### A.

◼◼◼ Annexation is a special statutory proceeding for the detachment of the annexed property from the county in which it lies, *see Simon v. Anderson*, 112 Colo. 558, 564, 151 P.2d 972, 974 (1944), and, if lawfully annexed, such property becomes a part of the annexing municipality, *see City & County of Denver v. County Court*, 137 Colo. 436, 439, 326 P.2d 372, 374 (1958). Annexation, while legislative in nature, *see Board of County Comm'rs v. City & County of Denver*, 37 Colo.App. 395, 398, 548 P.2d 922, 924

5. The Municipal Annexation Act of 1965 was repealed and reenacted by the General Assembly in 1975. *See* Municipal Annexation Act, ch. 275, part 1–7, §§ 31–12–101 to –707, 1975 Colo. Sess. Laws 1076. However, the language and provi-

sions of the current Act are very similar to that of the former Act. Thus, in our review here, we find instructive, and rely upon, cases construing the Annexation Act prior to its repeal and reenactment in 1975.

(1976), is a consensual proceeding between the petitioning landowner(s) and a municipality.[6]

Under the Annexation Act, annexation is initiated by the filing of a petition by the landowners of more than fifty percent of the property to be annexed. § 31–12–107(1)(a), 12B C.R.S. (1986). The petition must contain the "signatures of such landowners." § 31–12–107(1)(c)(V). The petition for annexation must include certain information, including a request that the municipality approve the annexation of the area proposed to be annexed. § 31–12–107(1)(c). Conspicuously absent from section 31–12–107(1), is any requirement that agreements or conditions precedent to annexation be included or otherwise set forth in the petition.

If the landowner's petition is in substantial compliance with section 31–12–107(1), the governing body of the annexing municipality begins annexation proceedings by making "a resolution finding substantial compliance" and establishing "a date, time, and place that the governing body will hold a hearing to determine if the proposed annexation complies with sections 31–12–104 and 31–12–105." §§ 31–12–108(1), 12B C.R.S. (1986). If the municipality finds that the proposed annexation does not comply with the applicable provisions, the annexation proceedings "shall terminate." § 31–12–110(c). The consent of each party to the annexation, i.e., the landowner and the municipality, is evinced by the landowner's petition, *see* § 31–12–107(1), along with the required actions of the municipality's governing board, *see* §§ 31–12–108 to –115.

A municipality is not legally required to annex an area pursuant to the landowner's petition, but may impose "additional terms and conditions" for annexation in accordance with section 31–12–112. § 31–12–107(4); *City of Colorado Springs v. Kitty Hawk Dev. Co.,* 154 Colo. 535, 545, 392 P.2d 467, 472 (1964) (a municipality is under no legal obligation to annex and may reject a petition for annexation for no reason at all). If the governing body of a municipality imposes additional terms and conditions, however, the annexation must be preceded by an "election." *See* § 31–12–112(1). Any owner of land within the area to be annexed, whether a qualified elector or not, may vote to approve any additional terms and conditions. § 31–12–112(2). Any qualified elector who lives in the proposed annexation area, including those who are not landowners, may vote. § 31–12–112(1). If a majority of those entitled to vote approves the additional terms and conditions proposed by the municipality, the annexation may take place. *Id.* While an election is not required "for the approval of any terms and conditions" the petitioning landowners and the municipality previously agreed to voluntarily, such an election cannot "invalidate any memorandum of agreement ... voluntarily made by and between the annexing municipality and one or more landowners." § 31–12–112(2).

Under section 31–12–108.5, 12B C.R.S. (1996 Supp.), the annexing municipality must prepare an annexation impact report, a copy of which must be filed with the clerk of the board of county commissioners for the county in which the property is located. The report must include a map and a copy of "any draft or final preannexation agreement, if available." [7] § 31–12–108.5(1)(a),(b).

**6.** Section 31–12–102(1), 12B C.R.S. (1986), provides an express declaration of legislative policies and procedures "necessary and desirable for the orderly growth of urban communities in ... Colorado." Among other purposes, section 31–12–102(1) expressly provides that the Annexation Act is intended:
    (a) To encourage natural and well-ordered development of municipalities of the state;
    (b) To distribute fairly and equitably the costs of municipal services among those persons who benefit therefrom;
    (c) To extend municipal government, services, and facilities to eligible areas which form a part of the whole community;

....
    (f) To reduce friction among contiguous or neighboring municipalities; and
    (g) To increase the ability of municipalities in urban areas to provide their citizens with the services they require.

**7.** "Annexation Agreement" as used in this opinion is the "preannexation agreement" set forth in section 31–12–108.5(1)(b). In accordance with the findings of the trial court, the proposed draft Annexation Agreement prepared by Superior's attorney could have been filed as a "draft or final preannexation agreement" under section 31–12–108.5.

If any landowner "believes itself to be aggrieved by the acts of the governing body of the annexing municipality," the landowner may have such acts reviewed in proceedings instituted in a "district court having jurisdiction of the county in which the annexed area is located." § 31–12–116(1)(a), 12B C.R.S. (1986). Judicial review of an annexation is a special statutory proceeding and is limited to determining "whether the governing body has exceeded its jurisdiction or abused its discretion." § 31–12–116(3); *see TCD North, Inc. v. City Council of Greenwood Village*, 713 P.2d 1320, 1321 (Colo.App.1985). Where the hearing before the governing body was not stenographically reported and the court determines, after proper investigation, that the minutes of the hearing are not adequate to determine the issue, the court may conduct a de novo review. § 31–12–116(5). Otherwise, the court should rely on the record of proceedings before the governing body. On review, great latitude must be accorded to legislative discretion, and every reasonable presumption in favor of the validity of the action of a municipality must be indulged. *Id.* In the past, we have limited our review to determining whether the procedural mandates of the statute had been met. *See City of Englewood v. Daily*, 158 Colo. 356, 359, 407 P.2d 325, 326 (1965).

### III.

Applying the foregoing principles to this case, along with the facts found by the trial court, i.e., that the Annexation Agreement had been contemplated by the parties throughout the process, we affirm the judgment of the court of appeals. We reiterate that annexation is a special statutory process requiring, at the outset, the mutual consent of the petitioning landowner(s) and the annexing municipality. *See Kitty Hawk*, 154 Colo. at 545, 392 P.2d at 472 (annexation can take place only when the minds of the city and of the landowners agree). Hence, where, as here, it is understood that annexation is conditioned upon the parties entering into an annexation agreement, a municipality's efforts to effect the annexation without such an agreement is clearly contrary to that consent. In effect, when Superior and Midcities Company failed to enter into the Annexation Agreement before Superior adopted the ordinances annexing the Midcities Property, it imposed conditions not set forth in Midcities Company's petition and contrary to the understanding and agreement the parties intended to govern the process. Therefore, Superior was required to obtain the landowner's consent prior to annexation through the election called for by section 31–12–112. Failing to do so, Superior exceeded its jurisdiction and abused its discretion under the Annexation Act. Thus, the actions of its governing board, adopting ordinances to effect the annexation without the landowner's consent, were contrary to the Annexation Act and properly held void pursuant to section 31–12–116(3).[8]

### A.

Section 31–12–112(1), 12B C.R.S. (1986), provides: "If the governing body determines that ... additional terms and conditions should be imposed upon the area proposed to be annexed, an election shall be called ... to determine whether a majority of the qualified electors approve such annexation, with such terms and conditions ... as may attach thereto." If the annexation ordinance itself imposes terms and conditions upon the annexed area, the requirement of an election is triggered. *Board of County Comm'rs v. City & County of Denver*, 193 Colo. 325, 330, 566 P.2d 335, 339 (1977). Thus, if the municipality attaches terms and conditions in addition to those found in the petition for annexation, it must conduct an election, disclosing such terms and conditions

---

**8.** *See Glendinning v. City & County of Denver*, 50 Colo. 240, 242, 114 P. 652, 652 (1911) ("All municipal ordinances must be in harmony with the general law of the state; if they are inconsis-

tent or repugnant to such general law, they are void, ultra vires. ...").

Under our holding today, we do not reach, but save for another day, the question of whether a landowner may withdraw a petition for annex-

to the landowner,[9] to obtain approval for the annexation.

Here, Superior did not conduct an election to obtain approval for its annexation of the Midcities Property. Superior did, however, place additional terms and conditions on the proposed annexation—that, contrary to the agreement reached between Midcities Company and Superior, the property would be annexed without entering into the Annexation Agreement. Because Superior imposed such terms and conditions without first conducting an election to determine if the landowner would "approve such annexation, with such terms and conditions," § 31–12–112(1), Superior did not comply with the Annexation Act. Thus, Superior exceeded its authority by adopting ordinances designed to effect the annexation of the Midcities Property without conducting the election required by statute. On these grounds, the trial court and court of appeals properly concluded that Superior's annexation of the Midcities Property was void.

### B.

Superior contends that the trial court did not have the authority to void the annexation because courts only have the power to void an annexation where a municipality has violated the provisions of the Annexation Act, and no such violation has occurred here. While it is true that the statute limits judicial review to determining whether a governing body has violated the Annexation Act by exceeding its jurisdiction or abusing its discretion, we disagree with Superior's contention that its actions in this case did not exceed its authority or abuse its discretion.

▆▆▆▆ Superior argues that the Annexation Act does not require that the annexing municipality and landowner integrate all of their mutually acceptable terms into an annexation agreement as a prerequisite to annexation. With this limited proposition, we agree. As did the trial court and the court of appeals, *see Midcities*, 916 P.2d at 597, we also conclude that there is no requirement under the Annexation Act that a municipality enter into an annexation agreement as a condition precedent to annexation.[10] However, the Annexation Act does not prohibit annexation agreements between annexing municipalities and landowners.

In the instant case, under the review permitted by section 31–12–116, the trial court found, and the record supports those findings, that the Annexation Agreement between Superior and Midcities "was required before [Superior] could annex [Midcities] Property. [The record] makes it overwhelmingly clear that there was to be an annexation agreement in place prior to annexation."

Indeed, mutual understanding and agreement as to land uses that would be permitted on the landowner's property, certain aspects of design, highway and street access, and the provision of essential services, including water, sanitary sewer and storm drainage, were of substantial importance to both Superior and the petitioning landowner. In this regard, the parties intended to ensure that sufficient consideration would be given to development interests prior to annexation; thereby, the municipality and landowner were able to condition annexation upon their eventual agreement as to public improvements.[11] In this case, the record reveals that several town officials urged postponement of the actual annexation until issues involving terms of the Annexation Agreement could be

ation in an effort to terminate the annexation proceedings.

9. Under section 31–12–112, the "voters" are (1) qualified electors residing within the area proposed to be annexed, and (2) landowners in the area to be annexed. Here, only Midcities Company is entitled to vote because it is the sole landowner and there are no residents or qualified electors living on the Midcities Property.

10. Our disposition of this case today should not be read to require annexation agreements any

more than the Annexation Act should be read to prohibit such an agreement if not expressly set forth in the landowner's petition. *See Geralnes B.V. v. Greenwood Village*, 583 F.Supp. 830, 839 (D.Colo.1984).

11. Such an agreement, while not identical to, can be analogized to an agreement that controls public improvements and land development for properties subject to county regulation. *See generally Board of County Comm'rs v. Bainbridge, Inc.*, 929 P.2d 691 (Colo.1996).

resolved. On July 22, 1993, a "development review team," including the town attorney and town planner, issued a staff report on Midcities Company's "Property Development Application." This report stated that:

> The Town Attorney is preparing an Annexation Agreement that will deal with matters such as utility service, drainage, roads, zoning, etc. This agreement *must be in place prior to the approval of any annexation ordinance* and is currently under negotiation.
>
> . . . .
>
> Because numerous items associated with this annexation are still under discussion, including the content of the Annexation Agreement, Board action on the annexation ordinance should be delayed until the outstanding issues are resolved.
>
> . . . .
>
> Until the Annexation Agreement is finalized, staff recommends the Board of Trustees continue the public hearing on the Midcities [Company] development submissions.

(Emphasis added.) In a June 1, 1993, letter regarding Midcities Company's annexations, the town attorney stated, "[t]he Annexation Agreement is [ ] required [by] the final annexation hearing." Moreover, in a June 30, 1993, letter from the town attorney to the town planner, the town attorney stated that the Annexation Agreement was to be completed the week prior to the annexation hearing. Finally, the minutes of the July 26, 1993, Board meeting, and the annexation resolution and ordinance adopted at the August 23 Board meeting, also indicated that the Annexation Agreement was to be in place prior to annexation.

In *Board of County Commissioners v. Denver*, we noted, "a city may determine its annexation policy with respect to each annexation." 193 Colo. at 330, 566 P.2d at 339. Consistent with the trial court's findings, Superior, by its agreement with Midcities, obli-

gated itself in this case to enter into a finalized Annexation Agreement before it acted to annex the Midcities Property. Thus, Superior's policy with respect to the Midcities Property required a finalized Annexation Agreement to be in place as a condition precedent to its annexation of the Midcities Property. Here, Superior should be bound by its own actions and the consequences that naturally flow under the Annexation Act. The fact that Midcities Company's petition did not expressly require the annexation agreement as a condition precedent to annexation does not control the result here.[12] The actions and statements of the town officials before the Board and in the record below support the trial court's finding that, in this annexation proceeding, the municipality and the landowner voluntarily agreed to such a condition. By subjecting the annexation to a condition that a development agreement would be entered into prior to the actual annexation, Superior limited its discretion.

If the parties fail to satisfy agreed upon conditions to annexation, annexation cannot take place without the landowner's consent to annexation and the municipality's willingness to waive such conditions. If a municipality and the landowner cannot formulate an annexation agreement, which was required as a condition to annexation, the municipality must obtain the consent of the landowner to an annexation without such an agreement, or, in effect, obtain consent to the municipality's imposition of "additional terms and conditions." *See* § 31–12–107(4), –112(1) & (2). Because Superior and Midcities Company were unable to arrive at mutually agreeable terms for the Annexation Agreement, Superior was unable to annex the Midcities Property without first obtaining the consent of Midcities Company.

In *City of Colorado Springs v. Kitty Hawk Development Co.*, 154 Colo. 535, 545, 392 P.2d 467, 472 (1964), we stated, "Annexation can take place only when the minds of the

---

12. While the better practice to be followed by parties who seek to condition annexation on the terms of an annexation agreement is to include such words of condition in the petition for annexation, we must note that the Annexation Act does not require such agreement to appear in the petition. Therefore, if the municipality and the landowner otherwise agree to certain conditions precedent to annexation, they can be bound by that agreement unless a waiver or further consent is subsequently obtained.

city and the owners of the land contiguous to the city agree that the property shall be annexed and upon the terms upon which such annexation can be accomplished." We also noted that a municipality "may impose such conditions by way of agreement as it sees fit." *Id.* There, in effect, we recognized that, in consensual annexations, the petitioning landowner's consent stands as the analog to the municipality's right to reject, without reason, a petition for annexation.

By attempting to annex the property without obtaining Midcities Company's consent to a changed or new condition as contemplated by section 31–12–112, Superior abused its discretion and exceeded its authority under the Annexation Act. Because Superior violated the Annexation Act, its annexation of the Midcities Property is void.

IV.

In sum, we conclude that annexation is a consensual process which permits a mu-nicipality and a landowner to condition annexation upon the completion of a land development or annexation agreement before annexation may take place. Because Midcities Company and Superior failed to enter into the Annexation Agreement contemplated by both parties, we hold that Superior abused its discretion by attempting to annex the Midcities Property without conducting the election required by section 31–12–112 to obtain the landowner's consent. Accordingly, because its efforts in that regard were contrary to the requirements of controlling law, Superior's annexation of the Midcities Property was properly deemed void by the trial court and we therefore affirm the judgment of the court of appeals.