COLORADO COURT OF APPEALS                                    2016COA145

Court of Appeals No. 15CA1135
Boulder County District Court No. 14CV31112
Honorable Andrew Hartman, Judge

Golden Run Estates, LLC, a Colorado limited liability company; and Aaron
Harber,

Plaintiffs-Appellees,

v.

Town of Erie,

Defendant-Appellant.

JUDGMENT VACATED IN PART AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Freyre and Nieto*, JJ., concur

Announced October 6, 2016

RJB Lawyer, LLC, Robert J. Bruce, Denver, Colorado, for Plaintiffs-Appellees

Nathan Dumm & Mayer, P.C., J. Andrew Nathan, Marni Nathan Kloster,
Nicholas C. Poppe, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     This case arises out of defendant, Town of Erie, annexing a 320-acre property located in unincorporated Boulder County that plaintiff Aaron Harber owned.  Harber envisioned his company, plaintiff Golden Run Estates, LLC, developing the property into a sustainable, mixed-use community for 40,000 residents over 25 to 50 years.  After the parties entered into a pre-annexation agreement, Golden Run and Harber (the plaintiffs) sued Erie because further negotiations did not result in an annexation agreement.  They brought four claims: two contract claims, one claim for declaratory relief, and one claim for a judicial disconnection decree.

¶ 2     After trial, the court concluded that it had subject matter jurisdiction over the plaintiffs' contract claims and entered judgment on the jury's award of damages of over $350,000.  The trial court also ordered judicial disconnection under section 31-12-702, C.R.S. 2016.  The only claims before us are Erie's appeal of the jury award on the plaintiffs' two contract claims.[1]  Because we

---

[1] The trial court entered a judicial decree disconnecting the property from Erie, a ruling which Erie does not appeal.  The court concluded that it did not have subject matter jurisdiction over the

conclude that the trial court did not have subject matter jurisdiction over either contract claim, we vacate that part of the judgment, vacate the jury's award of damages, and remand the case with directions to grant Erie's motion for directed verdict and for a determination of the amount of attorney fees incurred by Erie for this appeal.

## I.     Background

¶ 3     In 2013, Harber discussed with Erie his plan to develop the property. The parties ultimately agreed to pursue annexation of the property into Erie. Erie proposed the parties enter into a pre-annexation agreement, as the first step of a three-part annexation process. An annexation agreement and a detailed development plan would follow the pre-annexation agreement.

¶ 4     In April 2013, Erie and the plaintiffs entered into a pre-annexation agreement, which defined the roles of the plaintiffs and Erie until the parties could enter into a more formal annexation agreement. The parties anticipated they would reach an annexation agreement by August 1, 2013, but did not do so.

plaintiffs' declaratory relief claim, a ruling that they do not challenge.

¶ 5     The pre-annexation agreement set forth remedies for both parties in the event of a breach. While Erie retained "all remedies at law and equity," the plaintiffs negotiated for two remedies contained in sections 4A and 4B of the pre-annexation agreement. As relevant here, section 4A reads:

> At any time on or after August 1, 2013, in the event the Golden Run Annexation agreement proposed by [the plaintiffs], as it may be mutually amended by the parties hereto, is not approved by [Erie] at the same time as [Erie] approves the annexation of the Property, then, in that event, at [the plaintiffs'] sole option, [*the plaintiffs*] *may retroactively withdraw the Annexation Petition* without penalty or further obligation by written notice delivered to [Erie] and the Property shall not be annexed by [Erie], regardless of annexation approval or any other actions taken by [Erie].

(Emphasis added.)[2]

---

[2] Although the plaintiffs mentioned section 4B in their answer brief as the basis for the court's award of damages, Harber conceded at the pretrial conference that section 4B could not be a basis for relief: "I don't have a problem promising you and entering in and agree[ing] to an order that says I can't seek relief under 4B." The court ruled that "4B will not form the basis of a Plaintiff remedy in and of itself or a violation of 4B." Therefore, we need not address section 4B.

¶ 6     In October 2013, Erie's Board of Trustees adopted Ordinance 30-2013, which annexed Golden Run into Erie.  The ordinance became effective on November 15, 2013.

¶ 7     In January 2014, the plaintiffs submitted a draft annexation agreement for the Board of Trustees' meeting.  In the draft agreement, Harber proposed that he alone would select the number of units in Golden Run.  However, a trustee proposed amending the annexation agreement to allow Erie to approve the number of units that Harber had selected.  The plaintiffs did not want Erie to have any "veto power" over the scale of Golden Run and thus rejected the proposed agreement.

¶ 8     On February 24, 2014, 101 days after the annexation became effective, the plaintiffs requested "retroactive nullification" of the annexation of Golden Run.  However, the next day, they withdrew their request, and the parties continued to negotiate, but without reaching agreement.  Nonetheless, the plaintiffs agreed to move forward with Erie's initial zoning plan, given Erie's assurances that all the plaintiffs' "rights to disconnect" would remain intact.

¶ 9     In July 2014, an Erie police officer responded to Golden Run after the police department received a series of complaints about its

4

condition. Upon arrival, the police officer observed several municipal code violations from the property's edge, but a "tenant" refused his entry onto the property. Nevertheless, the tenant informed the officer that his mobile home lacked running water and that he was forced to urinate and defecate outside. The officer contacted Boulder County Adult Protective Services for the elderly, at-risk tenant and obtained a search warrant to view the remainder of the property.

¶ 10  The search revealed that four tenants were living in dwellings unfit for human habitation. The structures on the property were in various states of decay and concerns existed over numerous deficiencies in the electrical systems exposed to outside elements. An Erie building official ordered the tenants to vacate all dwellings on the property. The plaintiffs believed that their requests for disconnection or "retroactive nullification" of Golden Run's annexation ensured that they were "under no further obligation" to Erie and thus were upset by the police action.

¶ 11  On July 30, 2014, the plaintiffs requested that the Board of Trustees consider their proposed disconnection ordinance. Erie's Town Administrator informed the plaintiffs that they did not have a

right to disconnect the property. The plaintiffs objected because disconnection was "guaranteed by the pre-annexation agreement."

¶ 12 On August 15, 2014, the plaintiffs "(1) withdr[ew] our Annexation Petition, (2) withdr[ew] our Zoning Application, and (3) request[ed] to immediately disconnect (i.e. de-annex) from the Town of Erie." They also notified Erie of its alleged breach of the pre-annexation agreement.

¶ 13 When Erie failed to remedy its alleged breach within the thirty-day grace period provided in the pre-annexation agreement, the plaintiffs initiated this lawsuit. They asserted four claims: (1) breach of contract for Erie "not processing the de-annexation of the Properties"; (2) breach of the implied covenant of good faith and fair dealing for Erie exercising its discretion in a commercially unreasonable fashion and without regard to the intent of the parties when the pre-annexation agreement was executed; (3) declaratory relief to "de-annex" or "disconnect" the properties from Erie; and (4) an alternative claim for a judicial decree disconnecting the properties from Erie.

¶ 14 After the plaintiffs rested their case, Erie moved for a directed verdict on several grounds. It asserted that the trial court lacked

6

subject matter jurisdiction over the breach of contract claims because the Municipal Annexation Act of 1965 (the Act), §§ 31-12-101 to -123, C.R.S. 2016, precluded the relief the plaintiffs sought. Erie also moved for a directed verdict on damages, arguing that the plaintiffs' attempts to value Golden Run without any expert testimony were speculative as a matter of law. Erie also moved for a directed verdict on the bad faith claim.

¶ 15 As relevant here, the court concluded that it had subject matter jurisdiction over the plaintiffs' contract claims and denied Erie's motion for directed verdict. The court entered judgment in the plaintiffs' favor, totaling $362,500 in damages: $305,000 on their breach of contract claim and $57,500 on their claim for breach of the implied covenant of good faith and fair dealing.

¶ 16 Erie raises four contentions on appeal: (1) the trial court erred under the Act in concluding that it had subject matter jurisdiction over the plaintiffs' contract claims and in upholding the breach of contract verdict; (2) the court erred in upholding the jury's award of damages for a breach of the implied covenant of good faith and fair dealing despite provisions of the Act that prohibit such an award; (3) the court erred in allowing the jury to consider the plaintiffs'

7

damages for Golden Run's lost opportunity costs in light of the insufficient evidence presented at trial; and (4) the court abused its discretion in permitting the plaintiffs' property manager to testify because he was not qualified as an expert.

¶ 17 We agree with Erie that the trial court did not have subject matter jurisdiction over the plaintiffs' contract claims. Therefore, we need not address their contentions relating to the sufficiency of the evidence concerning lost opportunity costs or the property manager's testimony.

## II. Subject Matter Jurisdiction

¶ 18 Erie contends that the trial court lacked subject matter jurisdiction over the plaintiffs' contract claims because they did not bring their claims within the jurisdictional sixty-day limitation period under section 31-12-116(2)(a)(I), C.R.S. 2016. On the other hand, the plaintiffs respond that their contract claims were not controlled by the Act and that section 31-12-116 is inapplicable. We agree with Erie.

### A. Standard of Review

¶ 19 We review de novo a court's subject matter jurisdiction. *Tulips Invs., LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 11, 340 P.3d 1126,

1131.  Interpretation of the Act is a question of law, which we also review de novo.  *Bd. of Cty. Comm'rs v. City of Aurora*, 62 P.3d 1049, 1052 (Colo. App. 2002).  Last, we review de novo the interpretation of contract terms.  *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1159 (Colo. App. 2006).

### B.    Principles of Statutory Interpretation

¶ 20    "Our review is controlled by the Annexation Act."  *Town of Superior v. Midcities Co.*, 933 P.2d 596, 600 (Colo. 1997).  In construing its statutory provisions, we give effect to the intent of the General Assembly.  *See Allstate Ins. Co. v. Smith*, 902 P.2d 1386, 1387 (Colo. 1995).  We first look to the statutory language, giving words and phrases their commonly accepted and generally understood meanings.  *Id.*; *Bertrand v. Bd. of Cty. Comm'rs*, 872 P.2d 223, 228 (Colo. 1994).  Where the language of a statute is plain and the meaning is clear, we need not resort to interpretive rules of statutory construction, but must apply the statute as written.  *Allstate Ins. Co.*, 902 P.2d at 1387; *Bertrand*, 872 P.2d at 228.

C.    Principles of Contract Interpretation

¶ 21    "The primary goal of contract interpretation is to determine and give effect to the intent of the parties," which is to be determined from the language of the instrument itself. *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). Courts must enforce contracts as written. *Janicek v. Obsideo, LLC*, 271 P.3d 1133, 1138 (Colo. App. 2011). In interpreting a contract, we must "apply the plain meaning of the words used, . . . subject to interpretation from the context and circumstances of the transaction." *First Christian Assembly of God, Montbello v. City & Cty. of Denver*, 122 P.3d 1089, 1092 (Colo. App. 2005) (citation omitted).

D.    Applicable Law

¶ 22    Annexation is a special statutory proceeding where a property, if lawfully annexed, becomes a part of the annexing municipality by detaching the property from the county in which it lies. *Superior*, 933 P.2d at 600-01.

¶ 23    If any landowner "believes itself to be aggrieved by the acts of the governing body of the annexing municipality," the landowner may have such acts reviewed in proceedings instituted in a "district

court having jurisdiction of the county in which the annexed area is located." § 31-12-116(1)(a). Any party who wishes to bring such an action must file a motion for reconsideration "within ten days of the effective date of the ordinance finalizing the challenged annexation." § 31-12-116(2)(a)(II). Compliance with this provision is a condition precedent to the right to obtain judicial review under this section. *Id.*

¶ 24    Further, "[a]ll such actions to review the findings and the decision of the governing body shall be brought within sixty days after the effective date of the ordinance [approving an annexation], and, if such action is not brought within such time, such action shall forever be barred." § 31-12-116(2)(a)(I). Section 31-12-116 provides "the only procedure for judicial review of municipal annexations implemented under the Act." *Bd. of Cty. Comm'rs v. City of Woodland Park*, 2014 CO 35, ¶ 11, 333 P.3d 55, 58. The time limitation in section 31-12-116(2)(a)(I) is jurisdictional, and because it is not a true statute of limitations, as the supreme court stated in dicta in *Fort Collins-Loveland Water Dist. v. City of Fort Collins*, 174 Colo. 79, 84, 482 P.2d 986, 989 (1971) (interpreting predecessor statute), it cannot be tolled or waived.

¶ 25    We agree with the dicta and conclude that it applies here.

¶ 26    In addition, annexations "shall not be directly or collaterally questioned in any suit, action, or proceeding, except as expressly authorized in this section." § 31-12-116(4).

¶ 27    Pre-annexation agreements and contracts are valid under the Act, but a party seeking to enforce an annexation contract must still comply with the requirements found in the Act. *Superior*, 933 P.2d at 602; *see also* § 31-12-112(1), C.R.S. 2016.

### E.    Analysis

¶ 28    The plaintiffs contend that their contract claims did not challenge the annexation of the property, but rather, the claims sought to disconnect the property and to enforce the terms of the pre-annexation agreement, which, they argue, "specifically provided for disconnection." We disagree.

¶ 29    The plaintiffs use several different terms — disconnection, de-annexation, or withdrawal of the annexation petition — in their brief seemingly interchangeably. We conclude that disconnection and de-annexation are equivalent, but that withdrawal of an annexation petition has a different meaning. We will discuss the

definition of each term below because their meanings are essential to our analysis.

¶ 30　　We begin with "withdrawal of the annexation petition." An annexation petition is a petition presented to a municipality that is signed by landowners in the area to be annexed. *See* § 31-12-107(1), C.R.S. 2016. The petition for annexation enables the annexation of a property and has significance only until the property is actually annexed or the petition is withdrawn. *See generally Superior*, 933 P.2d at 599 (discussing that a party withdrew its petition for annexation so that it could petition a different municipality to annex its property).

¶ 31　　In contrast, disconnection procedures "disconnect" or "de-annex" an annexed property from the municipality of which it was a part. *See* §§ 31-12-501, -702, C.R.S. 2016; *see generally Grandote Golf & Country Club, LLC v. Town of La Veta*, 252 P.3d 1196, 1199 (Colo. App. 2011) (discussing whether a later ordinance effectively disconnected the property that a prior ordinance had purported to annex). We conclude that disconnection and de-annexation are analogous. The Act provides, as relevant here, for two avenues to

achieve disconnection — by ordinance and by court decree.[3] Under section 31-12-501, a landowner "may apply to the governing body . . . for the enactment of an ordinance disconnecting [its] land," and it is the duty of such governing body to "give due consideration to [such] application." As noted, the plaintiffs requested disconnection of Golden Run from Erie, but Erie denied their request. This request was made pursuant to the pre-annexation agreement and did not cite section 13-12-501.

¶ 32    Under section 31-12-702, a landowner "may petition the district court for the county in which such land is situated to have the same disconnected from said incorporated town." Although the plaintiffs did not cite section 31-12-702 in their complaint, they sought and obtained relief under this section when they asked for a judicial disconnection of Golden Run from Erie. Erie does not challenge the court's judicial disconnection of Golden Run on appeal.

_____

[3] The Act also provides a third avenue to achieve disconnection in part 6 of the Act, "Disconnection by Court Decree — Statutory Cities." § 31-12-601, C.R.S. 2016. We need not address this section because Erie is a statutory town, not a statutory city, as both parties stipulated before the trial court.

¶ 33    Thus, withdrawal of an annexation petition and disconnection or de-annexation have different meanings. Withdrawing an annexation petition relates to proceedings *prior* to annexation, and disconnection or de-annexation relate to proceedings *after* annexation. Withdrawing an annexation petition prevents an annexation, and disconnection or de-annexation ends it.

¶ 34    Whatever term the plaintiffs wish to use — whether disconnection, de-annexation, or withdrawing their annexation petition — in interpreting their rights under the pre-annexation agreement, we must first turn to the contract itself.[4] Section 4A of the contract provides that the plaintiffs "may retroactively withdraw the Annexation Petition." In our view, the plaintiffs could not seek to invoke section 4A of the pre-annexation agreement to withdraw their annexation petition *after* Erie had annexed Golden Run in its ordinance. In contrast, their remedy under section 4A of the pre-annexation agreement only applied *before* Erie annexed Golden Run.

---

[4] In the plaintiffs' brief, they also refer to requesting "retroactive nullification" of the annexation petition. We need not address the meaning of this phrase because it was not a remedy for which they bargained in the contract, nor is it a remedy provided by statute.

¶ 35    We disagree with the plaintiffs' contention that the word "retroactive" enabled them to seek to withdraw their annexation petition at any time, even after an annexation ordinance had been adopted. Section 4A, after providing for retroactive withdrawal of an annexation petition, then states that "the Property shall not be annexed by Erie." This language strongly suggests that withdrawal of the annexation petition must precede the adoption of an annexation ordinance. Also, the plaintiffs' interpretation would lead to an unreasonable result because it could allow rescission of an ordinance after property had been bought and sold based on expectations arising from the adoption of an annexation ordinance. *See First Christian Assembly of God, Montbello*, 122 P.3d at 1092.

¶ 36    We further conclude, as discussed below, that the provision in section 4A allowing retroactive withdrawal of a petition could only be invoked consistently with the jurisdictional timeframe in section 31-12-116.

¶ 37    Also, the plaintiffs' assertion that they did not challenge the annexation is contrary to their own complaint and theory of breach of contract. The plaintiffs' breach of contract claim alleged that Erie breached the pre-annexation agreement by "not processing the de-

16

annexation of the Properties." The plaintiffs' second contract claim arose out of their allegations that Erie was "exercising its discretion in a commercially unreasonable fashion and without regard to the intent of the parties when the pre-Annexation agreement was executed." Consequently, both claims related to the annexation. The fact that the plaintiffs' claims were based in contract does not alter the claims' status as ones that questioned Erie's decision not to allow the plaintiffs to withdraw their annexation petition of Golden Run. *See* § 31-12-116(2)(a)(I) (applying to "actions to review the findings and the decision of the governing body").

¶ 38 Accordingly, we also conclude that the plaintiffs' claims were impermissible collateral attacks on the annexation. It is impossible to find a breach of contract based on Erie's alleged refusal to "de-annex" Golden Run without questioning the annexation itself.

¶ 39 Having concluded that the plaintiffs' claims related to the annexation, we further conclude that section 31-12-116 applies to bar their contract claims, as it governs "[a]ll such actions to review the findings and the decision of the governing body." § 31-12-116(2)(a)(I); *see also Superior*, 933 P.2d at 600-02 (applying section 31-12-116 to a petition for annexation). We conclude that Erie's

17

decision not to agree to the plaintiffs' requests to "withdraw" the annexation petition was a "decision of the governing body." § 31-12-116(2)(a)(I).

¶ 40    We next conclude that the plaintiffs did not file a motion for reconsideration or seek judicial relief within the limitation periods as required. § 31-12-116(2)(a)(I), (II). As noted above, the annexation became effective under Erie's ordinances on November 15, 2013. Thus, the ten-day deadline to file a motion for reconsideration lapsed on November 25, 2013, and the sixty-day period for judicial review ran on January 14, 2014. The plaintiffs did not file a motion to reconsider and did not seek judicial relief until September 4, 2014. Further, the first time the plaintiffs objected to the annexation was February 25, 2014, a full month after the sixty-day limitation period ran.

¶ 41    As described above, section 31-12-116(2)(a)(I) is jurisdictional. *Fort Collins-Loveland Water Dist.*, 174 Colo. at 84, 482 P.2d at 989. Even though neither party characterizes section 31-12-116(2)(a)(I) as such, we conclude that it is a nonclaim statute. Such a statute deprives a trial court of subject matter jurisdiction, and its time limits cannot be tolled or waived. Like other nonclaim statutes,

18

section 31-12-116(2)(a)(I) provides that certain claims are "forever . . . barred" if not brought within statutorily specified periods. *See* § 15-12-1006, C.R.S. 2016 (claims against distributees are "forever barred" after limitation period); *In re Estate of Shuler*, 981 P.2d 1109, 1114 (Colo. App. 1999) (holding that section 15-12-1006 is a nonclaim statute and deprives the trial court of subject matter jurisdiction when it is applicable); *see also* § 24-10-109, C.R.S. 2016 (stating that under the Colorado Governmental Immunity Act, claims against government must be brought within limitation period or are "forever barred"); *Barnhill v. Pub. Serv. Co. of Colo.*, 649 P.2d 716, 718 (Colo. App. 1982) (holding that section 24-10-109 is a nonclaim statute and imposes "a condition precedent, namely, filing notice within the time specified, to the enforcement of the right of action for the benefit of the party against whom the claim is made"), *aff'd*, 690 P.2d 1248 (Colo. 1984); *see also Marin Metropolitan Dist. v. Landmark Towers Ass'n, Inc.*, 2014 COA 40, ¶ 43, ___ P.3d ___. ___ (section 32-1-105(7), C.R.S. 2016 creates jurisdictional bar to review of district's court's ruling regarding creation of special metropolitan district). Therefore, section 31-12-116(2)(a)(I) is a nonclaim statute whose

time limitations cannot be waived or tolled by a contract or other agreement. *See First Interstate Bank of Denver, N.A. v. Cent. Bank & Tr. Co. of Denver*, 937 P.2d 855, 861 (Colo. App. 1996) (holding that "parties cannot waive jurisdictional requirements").

¶ 42 Because section 31-12-116(2)(a)(I) is a nonclaim statute, the parties' pre-annexation agreement could not waive the sixty-day limitation period. Thus, even if we assume that the plaintiffs could "retroactively withdraw their petition" as provided in section 4A, they needed to withdraw their annexation petition within the sixty-day jurisdictional limitation period or section 31-12-116 would extinguish their claim.[5]

¶ 43 Nevertheless, the plaintiffs rely on *Geralnes B.V. v. City of Greenwood Village*, 583 F. Supp. 830 (D. Colo. 1984), to argue that where parties do not challenge the annexation of property, but, rather, seek disconnection in accordance with their contract terms, the complaint is not subject to dismissal for failure to file suit within the Act's deadlines. However, unlike the plaintiffs here, the

---

[5] The plaintiffs continuously argued that they were entitled to "retroactive nullification" of the annexation petition. Because of our disposition, we need not address whether the plaintiffs' use of that language had any significance.

plaintiff in *Geralnes* bargained specifically for the "remedy of disconnection of the Property . . . in accordance with" section 31-12-119 C.R.S. 2016; *Id.* at 838.  Because section 31-12-119 has not been changed since the *Geralnes B.V.* case, the version that the court considered is the same as the current one: 31-12-119, C.R.S. 2016.  In the pre-annexation agreement, the plaintiffs contracted only for the right to "retroactively withdraw the Annexation Petition."  The pre-annexation agreement is unambiguous. Disconnection is not a remedy contained in the plaintiffs' pre-annexation agreement.

¶ 44    The plaintiffs also contend that Erie's interpretation of the Act would enable a municipality to lure a landowner into annexation under the premise of fulfilling certain promises, only to repudiate those promises when annexation had been accomplished, which would be unfair, unjust, and bad public policy.  We disagree.  The plaintiffs, in confusing the meanings of withdrawing an annexation petition and disconnection, misconstrue the consequences of our statutory interpretation.

¶ 45    A municipality would not be able to "lure" a landowner and repudiate its promises with no remedy for the landowner.  Rather, if

a municipality does not fulfill its promises, a landowner has two remedies: either follow the procedures set forth in section 31-12-116 and challenge the annexation within sixty days or request a disconnection under section 31-12-501. If the municipality is a town and refuses to disconnect the property, the landowner may still request a judicial decree disconnecting the property. *See* § 31-21-702. The fact that the plaintiffs obtained a judicial decree disconnecting the property weakens their argument on appeal.

¶ 46    Therefore, we conclude that the trial court lacked subject matter jurisdiction over the plaintiffs' contract claims.[6]

### III.    Attorney Fees and Costs

¶ 47    Erie requests that, if we determine that the trial court lacked subject matter jurisdiction over the plaintiffs' breach of contract claims, we award it attorney fees and costs under section 31-12-116(2)(a)(IV). Erie also requests attorney fees and costs under section 14 of the pre-annexation agreement if it prevails. Likewise,

---

[6] We also conclude that the trial court was precluded from considering the plaintiffs' contract claims under section 31-12-116(2)(a)(I), C.R.S. 2016, because they failed to timely file a motion to reconsider, which was a condition precedent to judicial review.

the plaintiffs request that we award them attorney fees pursuant to the pre-annexation agreement.

¶ 48   Section 14 of the pre-annexation agreement provides that "once an award has been made . . . by a court, the defaulting party shall pay the other's reasonable attorney's fees and other costs incurred in enforcing the provision of this Pre-Annexation Agreement."

¶ 49   Because we conclude that the trial court lacked subject matter jurisdiction to consider the plaintiffs' contract claims, we award Erie reasonable attorney fees in prosecuting this appeal under section 14 of the pre-annexation agreement and section 31-12-116(2)(a)(IV). The amount of fees shall be determined by the trial court.  *See* C.A.R. 39.1.

## IV.   Conclusion

¶ 50   The judgment on the plaintiffs' contract claims is vacated.  The jury's award of damages is vacated, and the case is remanded with directions to grant Erie's motion for directed verdict and for a determination of the amount of attorney fees incurred by Erie for this appeal.

JUDGE FREYRE and JUDGE NIETO concur.

23