## No. 27138

**The Board of County Commissioners, of the County of Jefferson, State of Colorado, a body politic and corporate; the Jefferson County School District No. 1, a quasi-municipal corporation; Darrell M. Pickney; and John A. Topolnicki v. The City and County of Denver, State of Colorado, a municipal corporation; the City Council of the City and County of Denver, State of Colorado; the Board of County Commissioners of the City and County of Denver, State of Colorado; and Julian L. Cook**

(566 P.2d 335)

Decided June 13, 1977.                    Rehearing denied July 25, 1977.

Patrick R. Mahan, County Attorney, Richard J. Scheurer, Assistant, Robert H. Sonheim, Special Counsel for Jefferson County School District No. 1, George J. Robinson, Special Counsel for Jefferson County, for plaintiffs-appellees.

Max P. Zall, City Attorney, Herman J. Atencio, Assistant, David J. Hahn, Special Counsel, for defendants-appellants.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

On October 23, 1973, the Denver City Council by ordinance annexed to Denver certain unincorporated territory lying in Jefferson County. The plaintiffs, collectively here referred to as Jefferson County, brought this

action to set aside the annexation. The trial court found for Jefferson County, holding the ordinance void. We reverse.

This annexation was initiated by a petition signed by Julian L. Cook and the mayor of Denver. Cook was the owner of an undivided interest in all the property to be annexed except a fifty-foot strip of land owned by Denver. One month after the petition was filed, it was amended to correct the description of the fifty-foot strip owned by Denver. The Denver City Council approved the annexation without holding a public hearing or an annexation election.

## I. ALLEGED PETITION DEFICIENCIES

Where the annexation petition has been signed "by the owners of one hundred per cent of the property proposed to be annexed, exclusive of streets and alleys . . ." and no "additional terms and conditions are to be imposed . . . ," the statute[1] dispenses with the otherwise required notice, hearing and election and allows the expedited annexation ordinance procedure employed here. Jefferson County argues that this annexation did not qualify for the expedited procedure because Julian L. Cook, who signed the petition, was merely a tenant-in-common holding an undivided interest in the land annexed. It is contended, therefore, that since the petition was not signed by the other tenants-in-common, one hundred percent of the "landowners," as defined in the statute, did not sign the petition. In our view, however, the General Assembly has predetermined this issue in its definition of the term "landowner" for purposes of annexation:

"'Landowner' means the owner in fee of any undivided interest in a given parcel of land. . . . For the purpose of determining the compliance with the petition requirements . . . a signature by any landowner as defined in this subsection (8) shall be sufficient so long as any other owner in fee of an undivided interest in the same area of land does not object in writing to the city council of the annexing municipality within fourteen days after the filing of the annexation petition."[2]

■ The general assembly's power over annexation is limited only by express constitutional provisions and the quoted legislative definition of "landowner" controls our determination of the issue. *See Fort Collins-Loveland Water District v. City of Fort Collins*, 174 Colo. 79, 482 P.2d 986 (1971).[3] Because one hundred percent of the landowners signed the petition

---

[1]Municipal Annexation Act of 1965, 1965 Perm. Supp., C.R.S. 1963, 139-21-6(1)(h); now Colo. Sess. Laws 1975, ch. 275, 31-12-107(1)(g) at 1081. C.R.S. 1963, as amended, was in effect at the time of this annexation.
[2]1965 Perm. Supp., C.R.S. 1963, 139-21-21(8); now Colo. Sess. Laws 1975, ch. 275, 31-12-103.
[3]It should be noted that 1965 Perm. Supp., C.R.S. 1963, 139-21-21(8) has not been challenged on the ground that it does not provide for notice to the cotenants. In this regard, *see Fort Collins-Loveland Water District v. City of Fort Collins*, 174 Colo. 79, 482 P.2d 986 (1971) (dictum to the effect that the legislature may deny right of notice in annexation cases).

the requirements of the statute were met. 1965 Perm. Supp., C.R.S. 1963, 139-21-6(1)(h).[4] Likewise, the requirement of court approval was obviated. 1965 Perm. Supp., C.R.S. 1973, 139-21-19(1).[5]

It is further asserted that the annexation map failed to delineate individual ownership boundaries within the area to be annexed and that the map and the school board resolution did not accompany the petition.

The annexation map, however, clearly shows the fifty-foot strip owned by Denver as described in the amended petition. A second map of the area, also made a part of the record in this case, shows the fifty-foot strip both as described in the original petition and as described in the amended petition. All the rest of the property was owned by Cook and his cotenants. The annexation map erroneously indicates that the fifty-foot strip was owned by the Denver Water Board rather than by the City and County of Denver, but we consider this error insubstantial, since the signature pages attached to the petition clearly show that the strip belonged to the City and County of Denver.

The map and school board resolution did accompany the petition. As we recently decided in another case,[6] there is substantial compliance with the requirement of 1965 Perm. Supp., C.R.S. 1963, 139-21-6(1)(e)(i)[7] that copies of the annexation map accompany the petition where the map is available to the city council whether or not it is physically attached to the petition. Likewise, the school board's resolution authorizing the addition of the subject territory to its district must be before the city council. 1967 Perm. Supp., C.R.S. 1963, 139-21-4(5).[8] Here, both the map and school board resolution were on file with the Denver Clerk and Recorder. In its resolution, the city council recited that the petition was accompanied by a map and school board resolution. Since these documents were available for the city council's inspection and consideration prior to passage of the annexation ordinance, we hold that there was substantial compliance with the requirements that the documents accompany the petition.

Jefferson County also argues that the amended signature pages, attached to the amended petition, were improper. Clearly the amendment itself was not improper. The amended description made no changes in the external boundaries of the property to be annexed. The amended

---

[4]Now Colo. Sess. Laws 1975, ch. 275, 31-12-107(1)(g) at 1081.
[5]Now Colo. Sess. Laws 1975, ch. 275, 31-12-120(1) at 1091.
[6]*Board of County Comm'rs v. City and County of Denver,* 193 Colo. 211, 565 P.2d 212.
[7]Now Colo. Sess. Laws 1975, ch. 275, 31-12-107(d) at 1090.
[8]Now Colo. Sess. Laws 1975, ch. 275, 31-12-105(1)(d) at 1079.

description and a map illustrating the correction of the *internal* boundary lines separating Denver's fifty foot strip from the Cook property, all within the area to be annexed, were available to the city council when the annexation ordinance was considered and approved. This Court has previously upheld an annexation where the property description had been amended. *Adams v. Colorado Springs*, 178 Colo. 241, 496 P.2d 1005 (1972).

It is true that Exhibit A, consisting of the signature pages, contained a typographical error which caused Range 69 West to read Range 60 West. The property description was retyped correctly, however, on each signature page. The ordinance, city council resolution, school board resolution and annexation map each referred to Range 69 West. This obvious typographical error, considered in context, is insubstantial.

The signature pages themselves failed to set out the date of each signature, as required by statute. 1965 Perm. Supp., C.R.S. 1963, 139-21-6(1)(d)(ix).[9] Jefferson County has not alleged that any prejudice resulted from this technical oversight. The dates on the verifications accompanying the signatures show that signing took place prior to filing the documents. There is no claim that any of the signatures are stale. 1965 Perm. Supp., C.R.S. 1963, 139-21-6(1)(f).[10] Indeed it is obvious that they are not stale, for both of the property owners who signed the petition are parties to this action advocating that this property be annexed.

Next, the County claims that, since the act contains no provision for annexation of peripheral public ways, sections of Kipling and Belleview avenues were improperly annexed. Kipling and Belleview Avenues adjoin a portion of the perimeter of the area to be annexed which is non-contiguous with Denver. The adjacent sections of these public ways were annexed to their respective midlines.

This Court has previously upheld the annexation of peripheral tax-exempt lands. *Board of County Comm'rs v. City and County of Denver*, 170 Colo. 56, 459 P.2d 292 (1969). Facing the precise issue now being considered here, the Colorado Court of Appeals upheld annexation of a non-contiguous peripheral public way to its midline. *Board of County Comm'rs v. City and County of Denver*, 37 Colo. App. 395, 548 P.2d 922 (1976). The legislature has not restricted or prohibited annexation of a public way to the midline. We decline to create by judicial interpretation such a limitation on the power of annexation. *See Board of County Comm'rs v. City and County of Denver*, 170 Colo. 56, 459 P.2d 292 (1969).

---

[9]Now Colo. Sess. Laws 1975, ch. 275, 31-12-107(1)(c)(viii) at 1080.
[10]Now Colo. Sess. Laws 1975, ch. 275, 31-12-107(1)(e) at 1081.

■ The final attack on the application process is the claim that it was deficient because Denver failed to hold an election. It is argued that the annexation imposed additional terms and conditions upon the area annexed and therefore an election was required by 1965 Perm. Supp., C.R.S. 1963, 139-21-11(1)(c).[11]

By its terms, however, the ordinance[12] approved the annexation unconditionally. Jefferson County argues that even though the ordinance did not expressly impose additional terms or conditions, such terms and conditions were imposed both by a private agreement signed by Julian Cook and by pre-existing Denver ordinances.

These contentions are not persuasive. In another *Board of County Comm'rs v. City and County of Denver* case[13] decided recently, we held that private agreements entered into by one whose land is being annexed, if binding at all, are the landowner's personal obligations and not terms and conditions affecting the area to be annexed.[14] Unless the ordinance itself imposes terms and conditions upon the annexed area, the requirement of an election is not triggered.

■ Pre-existing ordinances do not impose additional terms and conditions on the area to be annexed. They are merely general laws which become applicable to new territory upon annexation. The existence of these laws may be considered by landowners, and, where applicable, by qualified resident electors, as a factor in deciding whether to consent to the annexation. Hence, no election is triggered where one hundred percent of the landowners, by petitioning for annexation, have already consented to be governed by the annexing city's ordinances. Absent such unanimous consent, an election is required whether or not the annexing city's ordinances impose "terms and conditions" on the land to be annexed. 1965 Perm. Supp., C.R.S. 1963, 139-21-6.[15]

## II. ALLEGED ORDINANCE DEFICIENCIES

■ Jefferson County asserts that the present annexation does not comply fully with Denver's annexation policies. We have decided recently, in another of the cases brought by Jefferson County, that a city may determine its annexation policy with respect to each annexation.[16] Therefore, for purposes of this annexation, Denver has repealed, by implication, its prior inconsistent annexation policy ordinances.

---

[11]Now Colo. Sess. Laws 1975, ch. 275, 31-12-112(1) at 1084.
[12]Denver Ordinance 645, Series 1973.
[13]*Supra* note 6.
[14]The City and County of Denver and the school board, who did not require the remaining cotenants to sign the memorandum agreements, have taken no further steps which would bind persons not assenting to the annexation.
[15]Now Colo. Sess. Laws 1975, ch. 275, 31-12-107 at 1080-1083.
[16]*Supra* note 6; *see also Aurora v. Andrews Land Co..* 176 Colo. 246, 490 P.2d 67 (1971).

Neither did Denver abuse its discretion in determining that this petition complied with the Municipal Annexation Act of 1965. While the application process was far from faultless, as we have determined above, it substantially complied with the statutory requirements.

It is true, as claimed, that the transcripts of the City Council meetings during which the annexation ordinance and resolution were approved do not contain any discussion of the annexation. However, other testimony showed that committee and other meetings were held which were not transcribed. This absence of formal recorded discussion, standing alone, does not prove abuse by the city council of its discretion.

Our review of the record reveals an adequate basis for the council's approval of both the ordinance and the resolution.

### III. ANNEXATION OF UNINCORPORATED LAND

Finally, Jefferson County argues that Denver cannot annex an area that is not part of an incorporated city or town. This assertion is based on *Colo. Const.* Art. XX, Sec. 7 which requires that Denver have only one school district and that territory annexed from contiguous "municipalities" be added to the Denver school district. Since there is no express provision for additions to the Denver school district except from contiguous "municipalities," Jefferson County concludes that the Constitution precludes Denver's annexing unincorporated territory.

We have held, however, that Article XX, Section 7 was not intended to limit annexations, but merely to require any school districts or parts of school districts, in annexed territory, to be consolidated into Denver's School District No. 1.[17]

Accordingly, we reverse the trial court and remand the cause with directions to enter a judgment upholding the annexation.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE GROVES and MR. JUSTICE LEE do not participate.

---

[17]*Supra* note 6.