**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOUGLAS, Plaintiff–Appellant,**

**and**

**Coalition of Northeastern Douglas County Against Annexation, Intervenor–Appellant,**

**v.**

**GARTRELL INVESTMENT COMPANY, LLC, a Colorado limited liability company, Defendant–Appellee,**

**and**

**The City of Aurora, Intervenor–Appellee.**

**No. 00CA0822.**

Colorado Court of Appeals, Div. V.

Aug. 2, 2001.

J. Mark Hannen, Douglas County Attorney, Castle Rock, CO; Griffiths, Tanoue, Light, Harrington & Dawes, P.C., Steven J. Dawes, Denver, CO, for Plaintiff–Appellant.

Robinson & Scheurer, P.C., Richard J. Scheurer, Lakewood, CO, for Intervenor–Appellant.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Thomas J. Ragonetti, J. Thomas MacDonald, Munsey L. Ayers, Jr., Denver, CO, for Defendant–Appellee.

Charles H. Richardson, City Attorney, Robert M. Rogers, Deputy City Attorney, Aurora, CO, for Intervenor–Appellee.

Opinion by Judge TAUBMAN.

This case involves a dispute among a developer wishing to build approximately 1,500 houses on over 1,000 acres in the greater Denver metropolitan area, a city that has been asked to annex the developer's land, and a county seeking to enforce its land use regulations so as to restrict the above-described development. The principal issue presented here is whether the county can require the developer to obtain a permit under the county's land use regulations before the developer may proceed to develop its property, notwithstanding the efforts of the developer to annex the property to the city. We affirm the judgment of the trial court denying the county's request for a permanent injunction and allowing the developer to proceed without complying with the county's land use regulations.

Plaintiff, Board of County Commissioners of Douglas County (the Board) filed a complaint against the developer, Gartrell Investment Co., L.L.C. (Gartrell). Two intervenors are also involved: Coalition of Northeastern Douglas County Against Annexation (CONDAA), aligned with the Board, and the City of Aurora (Aurora), aligned with Gartrell.

The Board and CONDAA appeal the judgment of the trial court denying the Board's request for a permanent injunction to enjoin

Gartrell from seeking annexation to Aurora or proceeding further with development without first applying for and securing a permit pursuant to the Areas and Activities of State Interest Act (AASIA), § 24–65.1–101, et seq., C.R.S.2000.

Gartrell owns more than 1,000 acres in northeastern Douglas County, adjacent to the City of Aurora, which it wishes to develop into two new communities consisting of approximately 1,500 houses, a golf course, and a 35 acre artificial lake. Under the Douglas County Master Plan, the Gartrell property is designated as "non-urban," such that it is suitable for low intensity uses, including agriculture or residences on lots of 35 acres or more.

Between July 1999 and February 2000, Gartrell spent substantial sums on its development plans, but without actually breaking ground for any development. After announcing its development plans, Gartrell was informed by the Board that it was required to obtain "a new communities permit" under the county's land use regulations, which had been adopted pursuant to AASIA. After development discussions with the Board proved unsuccessful from Gartrell's perspective, it filed a development application and three annexation petitions with Aurora.

Believing that Gartrell was seeking annexation to Aurora without complying with the requirement for obtaining a new communities permit, the Board brought this lawsuit to obtain a determination that Gartrell was required to comply with AASIA and its implementing regulations in Douglas County. Accordingly, the Board sought to enjoin Gartrell from taking any further steps toward development or pursuing annexation until it had obtained a new communities permit.

The trial court entered a temporary restraining order enjoining Gartrell from proceeding with its annexation or development plans. Subsequently, the Board's motion for a preliminary injunction was granted in part, permitting Aurora to process Gartrell's petitions for annexation, but enjoining Aurora from adopting an annexation ordinance pending further court proceedings.

Following a trial on the Board's motion for a permanent injunction, the trial court ruled in favor of Gartrell, concluding that the Board did not have authority to include annexation of urbanized growth centers within its definition of new communities pursuant to its regulations. Accordingly, the trial court dissolved the earlier injunction against Aurora, denied the Board's request for injunctive relief, and certified its judgment as final pursuant to C.R.C.P. 54(b). From this judgment, the Board appeals.

## I. Mootness

Following the submission of briefs, Gartrell moved to dismiss this appeal in November 2000 as moot on the basis that the annexation that the Board sought to enjoin "has been completed and become effective as a matter of law, pursuant to the relevant provisions of the Municipal Annexation Act, §§ 31–12–101, et seq., C.R.S. [2000] ("Annexation Act")." The motion asserted that Aurora had annexed the Gartrell property in August 2000 and that, because the Board was appealing only the trial court's denial of its request for a permanent injunction to prohibit Gartrell from proceeding with annexation, this appeal was now moot. In December 2000, a panel of this court denied the motion to dismiss the appeal as moot, with leave to raise the issue again in the briefs on appeal.

Although the mootness issue was briefed by the parties, at oral argument Gartrell abandoned its mootness argument. It did so because a trial court ruled in June 2001, in separate litigation, that the attempted annexation by Aurora was invalid.

## II. Activity of State Interest

The Board contends that the trial court erred by denying its request for a permanent injunction enjoining Gartrell from committing any act in furtherance of annexation or development of its property until it obtained a new communities permit pursuant to AASIA and the Board's regulations. Specifically, the Board asserts that the trial court erred in concluding that the Board did not have authority pursuant to AASIA to include within its regulations a provision concerning

the annexation of an existing or proposed urbanized growth center. We disagree.

AASIA, Colorado's first comprehensive land use law, was enacted by the General Assembly in 1974 in response to the "rapid growth and development of the state and the resulting demands on its land resources." Section 24–65–102(1), C.R.S.2000. *See City & County of Denver v. Bd. of County Comm'rs,* 782 P.2d 753, 755 (Colo.1989).

AASIA authorizes a local government, including a county, to designate matters of state interest within its jurisdiction. Among the "activities of state interest" that a local government may designate are "[s]ite selection and development of new communities." Section 24–65.1–203(1)(g), C.R.S.2000. AASIA defines the term "new communities" to mean "the major revitalization of existing municipalities or the establishment of urbanized growth centers in unincorporated areas." Section 24–65.1–104(13), C.R.S.2000.

Further, AASIA requires local governments to develop guidelines for the administration of designated matters of state interest. Section 24–65.1–402(1), C.R.S.2000. A local government may then adopt regulations interpreting and applying its adopted guidelines in relation to specific activities of state interest. Section 24–65.1–402(2), C.R.S.2000. Once such local government regulations have been adopted, any person desiring to conduct an activity of state interest must file an application for a permit with the local government where such activity is to take place. Section 24–65.1–501(1)(a), C.R.S.2000. Once such an application is submitted, the local government may approve it, deny it, or seek an injunction against any person desiring to conduct a designated activity of state interest who does not obtain a permit. *See* § 24–65.1–501(4), (6), C.R.S.2000.

Pursuant to the statutory provisions, the Board adopted comprehensive regulations, which, among other things, define the terms "new communities" and "urbanized growth center." Under the regulations, "new communities" means "an urbanized growth center in unincorporated Douglas County." *See* Regulations, Areas & Activities of Douglas County Designated as Matters of State Interest, § A.3.C (hereafter Regulations).

"Urbanized growth center," in turn, means "any residential development with a gross density greater than 1 dwelling unit per 2.5 acres or greater than 250 total residential units." Regulations, *supra,* § A.3.C.

In addition, the Regulations provide that urbanized growth centers include "[a]ny incorporation or annexation of an existing or proposed urbanized growth center in Douglas County when located outside the *MPAs* [municipal planning areas] as identified on the Douglas County Master Plan Land Use Map, as amended." Regulations, *supra,* § A.3.C. The validity of this regulation is at issue here.

■ It is undisputed that Gartrell's property is located outside the municipal planning areas identified on the Douglas County Master Plan Land Use Map. Accordingly, the dispositive question before us is whether the Board may require Gartrell to obtain a permit to pursue its annexation to Aurora pursuant to the provisions of AASIA. We conclude that it may not.

■ A county is not an independent governmental entity existing by reason of any inherent sovereign authority of its residents, but rather is a political subdivision of the state existing only for the convenient administration of the state government, created to carry out the will of the state. *Bd. of County Comm'rs v. Bainbridge, Inc.,* 929 P.2d 691, 699 (Colo.1996). As political subdivisions of the state, counties have only those powers that are expressly granted to them by the Colorado Constitution or by the General Assembly. *See Bd. of County Comm'rs v. Bowen/Edwards Assocs., Inc.,* 830 P.2d 1045, 1055 (Colo.1992).

■ To redefine any of the terms used in AASIA, the county would need to show either a constitutional grant of power or a statutory delegation of power. *Pennobscot, Inc. v. Bd. of County Comm'rs,* 642 P.2d 915, 918 (Colo.1982); *see also Nat'l Advertising Co. v. Dep't of Transportation,* 932 P.2d 871, 872 (Colo.App.1997) (any regulation that is inconsistent with or contrary to a statute is void and of no effect; and a regulation that is beyond the scope of a statute is in excess of administrative authority).

██ Here, AASIA authorizes counties and other local government entities to "designate certain activities of state interest" from among a statutorily prescribed list. *See* § 24–65.1–203(1), C.R.S.2000. Counties may designate only those activities expressly listed within the statute. *See City & County of Denver v. Bd. of County Comm'rs, supra,* 782 P.2d at 758.

Pursuant to AASIA, a county may regulate "new communities," a term which refers to "the major revitalization of existing municipalities or the establishment of urbanized growth centers in *unincorporated areas.*" Section 24–65.1–104(13) (emphasis added). Here, the General Assembly did not expressly list annexation as an activity of state interest that counties are authorized to regulate. Indeed, the General Assembly provided for comprehensive regulation of annexation by municipalities through the provisions of the Municipal Annexation Act, § 31–12–101, et seq., C.R.S.2000.

Further, although the Board may regulate new communities insofar as they concern urbanized growth centers in unincorporated areas, such is not the case here. Gartrell has proposed to develop its property only in the event that it becomes annexed to Aurora. To that extent, then, the Board may not limit Gartrell's ability to proceed with annexation of its property to Aurora by requiring it to obtain a permit pursuant to AASIA from the Board.

Accordingly, we conclude that because the county's regulation concerning annexation exceeds the scope of the statutory provisions of AASIA, such regulation may not stand. Thus, Gartrell may proceed in its efforts to have its property annexed to Aurora without first obtaining a permit from the Board.

Because of this disposition, we need not address the other contentions raised by the Board.

Judgment affirmed.

Judge KAPELKE and Judge NIETO concur.