**BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, Plaintiff-Appellee and Cross-Appellant,**

**v.**

**CITY OF AURORA, a Colorado municipal corporation; and Gartrell Investment Company, L.L.C., a Colorado limited liability company, Defendants-Appellants and Cross-Appellees.**

**No. 01CA1380.**

Colorado Court of Appeals,
Div. II.

Sept. 26, 2002.

As Modified on Denial of Rehearing
Dec. 5, 2002.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S.2001.

J. Mark Hannen, County Attorney, Kurt G. Stiegelmeier, Assistant County Attorney, Castle Rock, CO; Hayes, Phillips & Maloney, P.C., John E. Hayes, Denver, CO, for Plaintiff–Appellee and Cross–Appellant.

Charles H. Richardson, City Attorney, Robert Rogers, Assistant City Attorney, Robert G. Werking, Assistant City Attorney, Aurora, CO, for Defendant–Appellant and Cross–Appellee City of Aurora.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Thomas J. Ragonetti, J. Thomas Macdonald, Munsey L. Ayers, Jr., Denver, CO, for Defendant–Appellant and Cross–Appellee Gartrell Investment Company, L.L.C.

Gorsuch Kirgis, L.L.P., Gerald E. Dahl, Denver, CO; Colorado Municipal League, Carolynne C. White, Denver, CO, for Amicus Curiae Colorado Municipal League.

Hall & Evans, L.L.C., Josh A. Marks, Denver, CO, for Amicus Curiae Colorado Counties, Inc.

Opinion by Judge CASEBOLT.

In this action for review of a land annexation, defendants, the City of Aurora and Gartrell Investment Company, L.L.C. (developer), appeal the judgment in favor of plaintiff, the Board of County Commissioners of Douglas County, voiding the city's annexation of developer's property. The county cross-appeals the court's interpretation and application of an annexation provision. We affirm in part and reverse in part.

Developer filed petitions seeking annexation of three parcels of its land located immediately adjacent to the city's boundary. The county and others objected to the annexation. After the city annexed the property, the county initiated this action seeking judicial review under § 31–12–116, C.R.S. 2002. The county asserted that its designation as "open space" of two county roads between and adjacent to two of the parcels defeated contiguity requirements; that two "special districts" were not given notice of the annexation hearing; that the city's annexation impact report was deficient; and that the annexation petition lacked necessary signatures.

The district court agreed with the first three assertions, held that the city had abused its discretion and exceeded its jurisdiction in annexing the three parcels, and voided the annexation. Rejecting the county's alternative assertion, the court determined that the petitions complied with the signature requirement. This appeal followed.

I.

Defendants contend the court erred in concluding that the county's designation of two roadways as "county-owned open space" precluded the annexation of two parcels. We agree.

■ The Municipal Annexation Act of 1965(Act), § 31–12–101, et seq., C.R.S.2002, governs annexation. Judicial review of annexation is a special statutory proceeding and is limited to determining whether the governing body that approved the annexation exceeded its jurisdiction or abused its discretion. Section 31–12–116(3), C.R.S.2002; *see*

*Town of Superior v. Midcities Co.,* 933 P.2d 596 (Colo.1997); *TCD North, Inc. v. City Council,* 713 P.2d 1320 (Colo.App.1985).

██ On review, the court must accord great latitude to this legislative discretion and must indulge every reasonable presumption favoring the validity of the annexation. The court is generally limited to determining whether the Act's procedural mandates have been met, and it may not pass upon the wisdom of the annexation itself. *See Town of Superior v. Midcities Co., supra; City of Englewood v. Daily,* 158 Colo. 356, 407 P.2d 325 (1965); *TCD North, Inc. v. City Council, supra.*

██ Because we are in the same position as the district court in reviewing annexation proceedings, our review is de novo. *See City of Colorado Springs v. Bd. of County Comm'rs,* 895 P.2d 1105 (Colo.App.1994).

The Act requires the governing body to find that at least one-sixth of the perimeter of the area proposed for annexation is contiguous with the boundaries of the annexing municipality. The contiguity provision then excludes certain lands from the determination, as follows:

> Contiguity shall not be affected by the existence of a platted street or alley, a public or private right-of-way, a public or private transportation right-of-way or area, public lands, whether owned by the state, the United States, or an agency thereof, except county-owned open space, or a lake, reservoir, stream, or other natural or artificial waterway between the annexing municipality and the land proposed to be annexed.

Section 31–12–104(1)(a), C.R.S.2002.

██ Here, there is no dispute that the county roads located between the city and the parcels are public rights-of-way within the meaning of the statute. As such, defendants may satisfy the contiguity requirement by ignoring the two county roads.

### A.

██ The county asserts, however, that its designation of those roadways as "open space" in a resolution passed shortly before the annexation hearing prevents exclusion of the roads in determining contiguity. We disagree.

██ While the county is authorized to own, dispose of, and designate the uses of real property, it has no authority to define terms employed by the General Assembly in state statutes. *See Pennobscot, Inc. v. Bd. of County Comm'rs,* 642 P.2d 915 (Colo.1982); *Bd. of County Comm'rs v. Gartrell Inv. Co.,* 33 P.3d 1244 (Colo.App.2001). Rather, interpretation of the Act is a question of law for the court to decide, and our review is therefore de novo. *See United Airlines, Inc. v. Indus. Claim Appeals Office,* 993 P.2d 1152 (Colo.2000); *Minch v. Town of Mead,* 957 P.2d 1054 (Colo.App.1998). Accordingly, in determining whether the roadways at issue are open space for purposes of the Act's contiguity requirement, the county's designation is not binding.

██ In construing the provisions of the Act, we seek to give effect to the intent of the General Assembly. In doing so, we first look to the statutory language, giving words and phrases their commonly accepted and generally understood meaning. When the language of the statute is plain and its meaning is clear, we need not resort to interpretive rules of statutory construction, but must apply the statute as written. *Town of Superior v. Midcities Co., supra;* see § 2–4–101, C.R.S.2002.

Here, "open space" is not specifically defined by the Act. However, that term is generally understood to mean: "Any parcel or area of land or water essentially unimproved and set aside, dedicated, designated or reserved for public or private use or enjoyment or for the use and enjoyment of owners and occupants of land adjoining or neighboring such open spaces." *Black's Law Dictionary* 1091 (6th ed.1990).

This definition comports with the General Assembly's use of the term elsewhere. *See, e.g.,* § 29–21–101, C.R.S.2002 (types of open space include floodplains, greenbelts, agricultural lands, and scenic areas); § 39–1–102, C.R.S.2002 (open space includes farmland and forestland). Accordingly, we apply it here.

The property designated by the county has been improved through grading and surfacing and serves as public roadways. Because it is not essentially unimproved, the property is not open space within the meaning of § 31–12–104(1)(a).

We reject the county's contention that the property only partly consists of roadway. The record reveals that, while not all the roadway is surfaced, its entire length is graded for vehicular use. Moreover, testimony at the annexation hearing likewise established that the property consists of roadways that carry a substantial volume of vehicular traffic. The county's argument is also belied by the language of its own resolution declaring these roads to be open space, which explicitly and exclusively refers to the county roads by name as the designated open space property.

Because the county roads here are not open space, they do not affect contiguity under the terms of the Act. Hence, the court erred in voiding the annexation of the two parcels for failure to satisfy the contiguity requirement.

Under the circumstances of this case, we need not address whether a parcel of otherwise unimproved property that is traversed by an access road can be described as open space. Limiting our ruling to the facts of this case, we conclude only that a parcel consisting entirely of roadway is not "essentially unimproved" and therefore is not open space.

### B.

■ We reject the county's contention that defendants lack standing to assert that the resolution designating the roads as "open space" is invalid.

Defendants did not bring an action to invalidate the resolution. Instead, they responded to the county's argument, in the course of the annexation challenge, that the city abused its discretion or exceeded its jurisdiction by finding that the contiguity requirement was met despite the county's open space declaration. As parties to the county's claim brought pursuant to the Act, defendants were entitled to respond to the county's argument. *See* § 31–12–116; *Mort-*

*gage Inv. Corp. v. Battle Mountain Corp.*, 56 P.3d 1104 (2001) (traditional standing rules do not apply when a defendant's standing is challenged; once the plaintiff has established standing and the defendants have been brought into court by the plaintiff, the defendants' only role is to defend against the suit).

For similar reasons, *Bird v. City of Colorado Springs*, 176 Colo. 32, 489 P.2d 324 (1971), in which the court applied a presumption of validity to the city's classification of land, is inapposite. While it is true that a presumption of validity would normally apply to the county's open space designation if a facial challenge to the resolution had been brought, no such challenge was brought here. Moreover, we consider here only the meaning of "open space" as it is used in the Act's contiguity requirement, not the validity of the county's designation.

### II.

Defendants also contend that the district court incorrectly invalidated the annexation because of inadequacies in the impact report. We agree.

The Act requires the annexing municipality to file an impact report with the county in which the property to be annexed is located. Section 31–12–108.5, C.R.S.2002; *see Town of Superior v. Midcities Co., supra.*

The impact report must include a map or maps that show:

(I) The present and proposed boundaries of the municipality in the vicinity of the proposed annexation;

(II) The present streets, major trunk water mains, sewer interceptors and outfalls, other utility lines and ditches, and the proposed extension of such streets and utility lines in the vicinity of the proposed annexation; and

(III) The existing and proposed land use pattern in the areas to be annexed.

Section 31–12–108.5(1)(a), C.R.S.2002.

■ An immaterial variation from the statutory requirements is not fatal, and annexation may not be voided when there has

been substantial compliance. *See, e.g., Bd. of County Comm'rs v. City & County of Denver*, 193 Colo. 325, 566 P.2d 335 (1977); *Adams v. City of Colorado Springs*, 178 Colo. 241, 496 P.2d 1005 (1972); *TCD North, Inc. v. City Council, supra.*

■ Here, the court concluded that the report was inadequate because the map failed to depict the present streets, major trunk water mains, sewer interceptors and outfalls, other utility lines and ditches, and the proposed extension of such streets and utility lines in the vicinity of the proposed annexation. For that reason, the court voided the annexation. Even if we assume, without deciding, that the impact report requirement is jurisdictional and that a failure to comply renders an annexation void, our review of the record nevertheless convinces us that the city was in substantial compliance with that requirement.

The maps supplied by the city showed the general location of major streets and utility lines in the area of the proposed annexation, but did not show proposed extensions of streets and utility lines into the area to be annexed. However, at the annexation hearing, both developer and the city made it clear that final development plans for the area had not yet been drafted, let alone approved. Accordingly, the location of streets and utility lines within the proposed annexation area remained unknown. Thus, providing a map that purported to include these items would have been a futile gesture and would not have given the county any relevant information. We will not require the city to provide more information than it had. *See Higley v. Kidder, Peabody & Co.*, 920 P.2d 884 (Colo. App.1996)(the law does not require performance of a futile act).

Moreover, the Act requires only that the municipality show proposed extensions "in the vicinity of" the area to be annexed. Section 31–12–108.5(1)(a)(II). The city substantially complied with this requirement by providing maps showing the streets and utility lines near the area to be annexed.

For these reasons, we conclude that the district court erred in determining that the city failed to comply with the impact report requirement.

### III.

■ Defendants next contend the court erred in concluding that the city was required, but failed, to provide notice of the annexation hearing to the Regional Transportation District (RTD) and the Douglas County Soil Conservation District (DCSCD). We agree.

The Act requires the annexing municipality to provide notice of the annexation hearing to any "special district ... having territory within the area to be annexed." Section 31–12–108(2), C.R.S.2001.

It is undisputed that both RTD and DCSCD have territory within the area to be annexed and that the city did not notify either entity of the hearing. The issue is whether RTD and DCSCD are special districts within the meaning of the Act. We conclude that they are not.

The Act does not define the term "special district," and that term does not have a commonly accepted and generally understood meaning. When, as here, a plain reading of the statute does not reveal the legislative intent, we may interpret it by considering laws upon the same or similar subject. *See Montes v. Hyland Hills Park & Rec. Dist.*, 849 P.2d 852 (Colo.App.1992); *see also* § 2–4–203(1)(d), C.R.S.2002.

The Special District Act, § 32–1–101 to 32–1–1605, C.R.S.2002, defines a special district as "any quasi-municipal corporation and political subdivision organized or acting pursuant to the provisions of this article." Section 32–1–103(20), C.R.S.2002. We conclude that this definition is controlling in this case.

Here, RTD and DCSCD were not created and do not act pursuant to the Special District Act, which is title 32, article 1. Rather, each was created and operates pursuant to its own enabling legislation. *See* § 32–9–101, et seq., C.R.S.2002 (RTD Act); § 35–70–101, et seq., C.R.S.2002 (Colorado Soil Conservation Act). Both entities are referred to as "districts," but not as "special districts." Sections 32–9–105, 35–72–101.5(2), C.R.S. 2002. Accordingly, RTD and DCSCD are not special districts within the meaning of

the Act's notice requirement, and the district court incorrectly voided the annexation because the city failed to give notice to them.

The county contends that the Special District Act definition should not be applied to this notice requirement because in other statutes the General Assembly has used the phrase "special district organized under article 1 of title 32" or similar words when it determined that such a limiting definition was in order, such as §§ 1–1–108(2), 24–19–102(4), and 29–14–103(6), C.R.S.2002. Therefore, the county reasons, had the General Assembly intended to limit the "special districts" receiving annexation notices to those organized under the Special District Act, it would have done so explicitly. The county also notes that the Act does not specify the use of the Special District Act definition or otherwise refer to the Special District Act. We are not persuaded by these arguments.

The General Assembly has not created different classes of special districts that would necessitate a distinction in the Municipal Annexation Act. To the contrary, the Special District Act definition is the only definition of general applicability employed by the General Assembly.

The county asserts that the heading adopted for title 32, "Special Districts," evinces a legislative intent that all of the entities governed by statutes contained in title 32 (which includes RTD, but not DCSCD) are to be considered special districts, not just those governed by article 1 of that title. However, the arrangement of statutes within code titles is not a legislative act, but is directed by the committee on legal services, which prepares the Colorado Revised Statutes for publication. Section 2–5–101(2), C.R.S.2002. Moreover, a section heading forms no part of the legislative text, and no implication or presumption of a legislative construction is to be drawn solely from it. Section 2–5–113(4), C.R.S.2002; *Jones v. Westernaires, Inc.*, 876 P.2d 50 (Colo.App. 1993), *overruled on other grounds by Concerned Parents of Pueblo v. Gilmore*, 47 P.3d 311 (Colo.2002). Accordingly, we assign no weight to the heading of title 32.

We likewise reject the county's contention that the Special District Act definition should not be applied because the city provided notice to other entities that are not covered by the definition. The county cites no authority, and we are aware of none, that supports this proposition. Furthermore, we read the Act to describe the minimum notice required, and we therefore attach no significance to the city's decision to give notice where the Act does not require it.

## IV.

In its cross-appeal, the county contends that the court misconstrued a constitutional provision regarding the requirements for annexation by petition. We disagree.

The Colorado Constitution provides that unincorporated territory may be annexed only if the annexing municipality has received a petition "signed by persons comprising more than fifty percent of the landowners in the area and owning more than fifty percent of the area, *excluding public streets, and alleys and any land owned by the annexing municipality.*" Colo. Const. art. II, § 30(1)(b) (emphasis added).

The issue is whether the exclusion clause applies to the signature requirement relating only to those "owning more than fifty percent of the area" (the area requirement), or also to those "comprising more than fifty percent of the landowners in the area" (the number requirement). We agree with the district court that it applies to both.

Words and phrases must be read in context and construed according to the rules of grammar and common usage. Sections 2–4–101, 2–4–201(1)(c) C.R.S.2002 (court will avoid an interpretation that leads to an absurd result).

There is no logical reason to exclude public streets from the calculation of the size of the area, but then to include public streets when determining the percentage of landowners whose signatures are required. Therefore, the owners of streets and alleys are not required to sign the annexation petitions, and they are not included in calculating the number of owners.

The county contends that this construction runs counter to the "last antecedent" rule,

which was in effect when this constitutional provision was enacted. *See People v. McPherson*, 200 Colo. 429, 619 P.2d 38 (1980), *overruled by* § 2–4–214, C.R.S.2002 (last antecedent rule has not been adopted by the General Assembly and does not create a presumption of statutory intent). Under the last antecedent rule, relative and qualifying words and phrases are construed to refer solely to the last antecedent with which they are closely connected, where no contrary intention appears. *People v. McPherson, supra.*

We conclude that a contrary intention appears here because, as noted, the repetition of the term "area" in both the area requirement and the number requirement reveals an intent that the exclusion clause apply to both.

Accordingly, the court correctly determined that the owners of roads located within the area to be annexed, including Public Service Company, which has an interest in the land under one of the public streets at issue here, did not need to sign the petitions for annexation.

That part of the judgment determining that there was no violation of the petition signature requirement is affirmed. The balance of the judgment is reversed.

JONES and ROY, JJ., concur.