**GRANDOTE GOLF AND COUNTRY CLUB, LLC, a Colorado limited liability company, Plaintiff–Appellant,**

v.

**TOWN OF LA VETA, a Colorado municipal corporation, Defendant–Appellee.**

No. 09CA2750.

Colorado Court of Appeals, Div. V.

March 3, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2010.

Hall & Evans, L.L.C., Alan Epstein, Denver, CO; Gary E. Hanisch, Walsenburg, CO, for Plaintiff–Appellant.

Grimshaw & Harring, P.C., Larry W. Berkowitz, Philip M. Quatrochi, Thomas N. George, Denver, CO, for Defendant–Appellee.

Opinion by Judge J. JONES.

Plaintiff, Grandote Golf and Country Club, LLC (Grandote), appeals the district court's judgment granting defendant Town of La Veta's motion to dismiss. We affirm.

## I. Background

In 1984, the Town adopted Ordinance No. 131 to annex certain property in Huerfano County after Grandote's predecessor in interest, Grandote Golf and Country Club (GGCC), the owner of the property, petitioned it to do so. In 1985, GGCC filed a court action seeking to require the Town to

file two certified copies of the ordinance with the county clerk and recorder (the Town had filed only one), claiming that such filing was statutorily required to render the annexation effective. In exchange for GGCC dismissing the lawsuit, the Town adopted Ordinance No. 144 to repeal Ordinance No. 131. In 1987, the Town adopted Ordinance No. 154 to annex a portion of the property after GGCC petitioned it to do so.

In 2009, Grandote filed this action, seeking a declaratory judgment that Ordinance No. 144 was void and of no effect because the Town had not complied with statutory disconnection requirements, and therefore all the property Ordinance No. 131 purported to annex remained part of the Town.[1] The Town filed a motion to dismiss, arguing that two statutes of limitation barred Grandote's complaint. In later briefing, the Town also asserted that Ordinance No. 131's purported annexation never took effect because two statutorily required filings had not been made, and therefore Ordinance No. 144 did not have to comply with the disconnection statutes because there was no annexed property to disconnect. Specifically, the Town asserted that it had not filed a second certified copy of Ordinance No. 131 with the county clerk and recorder, as required by a former version of section 31–12–113(2)(a)(II)(A), C.R.S.2010, and by 24–32–109, C.R.S.2010, and that the county clerk and recorder had not filed a copy of Ordinance No. 131 with the division of local government, as required by section 24–32–109.[2] The Town asserted in the alternative that the property described in Ordinance No. 131 was no longer in the Town because GGCC, the Town, and the Board of County Commissioners would not have respectively petitioned for, adopted, and approved Ordinance No. 154 had they considered the property already within the Town.

The district court granted the Town's motion to dismiss, concluding that Grandote's declaratory judgment action accrued on Ordinance No. 144's effective date in 1985 and was, therefore, barred by the applicable two-year statute of limitations. Ruling in the alternative, the court concluded that Grandote was not entitled to declaratory relief because Ordinance No. 144 had repealed Ordinance No. 131, and GGCC's subsequent petition for and the Town's subsequent adoption of Ordinance No. 154 indicated that both GGCC and the Town understood the property was not in the Town.

Grandote appeals, contending that (1) the statute of limitations for its declaratory judgment action (a) never began to run because Ordinance No. 144 never became effective or, (b) began to run only when Grandote knew or should have known that Ordinance No. 144 was not effective; (2) the district court should not have considered GGCC's and the Town's subjective understanding of Ordinance No. 144's validity in determining whether that ordinance was effective; and (3) Ordinance No. 144 is invalid because the Town did not comply with statutory disconnection requirements.[3] All these contentions are moot, however, if the annexation contemplated by Ordinance No. 131 never became effective, a matter which, though raised by the Town, the district court did not address. We conclude that it did not become effective; therefore, Ordinance No. 144 repealed Ordinance No. 131 and did not need to comply with statutory disconnection requirements. See *Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo.App.2010) (if the district court reached the correct result, its judgment may be affirmed on different grounds); *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo.App.2004) (an appellate court may affirm the district court's ruling based on any grounds that are supported by the record).

1. In Grandote's view, Ordinance No. 154 was of no effect because the property it purported to annex (and more) had already been annexed. Grandote does not challenge the validity or effectiveness of Ordinance No. 154 on any other basis.

2. This latter requirement also appears in section 31–12–113(2)(a)(II)(B), C.R.S.2010.

3. Section 31–12–501, C.R.S.2010, provides (as it did in 1985) certain requirements to disconnect "a tract of land within and adjacent to the boundary of a city or town...." A "detachment of any area ... of an existing municipality" must also comply with the requirements of section 24–32–109.

## II. Standard of Review

■ The Town did not submit exhibits with its initial, statutes of limitation-based motion to dismiss. However, it subsequently submitted multiple exhibits to demonstrate that Ordinance No. 131's purported annexation of the property never became effective because (1) it had filed only one of the two certified copies of Ordinance No. 131 that sections 31–12–113(2)(a)(II)(A) and 24–32–109 required it to file with the county clerk and recorder; and (2) the county clerk and recorder had not filed a copy of the ordinance with the division of local government as required by section 24–32–109. Both parties assume that the district court considered these documents and that the Town's motion to dismiss was thereby converted to a motion for summary judgment, and urge us to apply summary judgment principles to Grandote's appellate contentions. Therefore, we agree that review applying such principles is appropriate. *See* C.R.C.P. 12(b) (if matters outside the pleadings are presented to and not excluded by the district court, a motion to dismiss for failure to state a claim shall be treated as one for summary judgment); *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 386 (Colo.2001) (same).

■ Summary judgment is appropriate if the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1074 (Colo.2010); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 290 (Colo.App.2009). We review a district court's grant of summary judgment de novo. *Rocky Mountain Festivals*, 242 P.3d at 1074; *Lafarge North Am., Inc. v. K.E.C.I. Colo., Inc.*, 250 P.3d 682, 685 (Colo.App.2010).

## III. Discussion

Grandote does not dispute that the two statutorily required filings of Ordinance No. 131 were not made. Instead, Grandote contends that we must presume Ordinance No. 131's purported annexation was effective because the Town never instituted court proceedings to have the ordinance declared invalid. In the alternative, Grandote contends that Ordinance No. 131 validly annexed the subject property because there was substantial compliance with the statutory filing requirements. We are not persuaded by either contention.

### A. The Town May Challenge the Effectiveness of Ordinance No. 131

■ As a threshold matter, we disagree with Grandote's argument that we cannot consider the alleged ineffectiveness of Ordinance No. 131's purported annexation because the Town never sought a declaratory judgment that Ordinance No. 131 was ineffective.

Grandote's complaint challenged whether Ordinance No. 144 effectively disconnected the property Ordinance No. 131 had purported to annex. Grandote thereby placed the effectiveness of Ordinance No. 131's annexation in issue because the disconnection statutes on which Grandote relies applied to Ordinance No. 144 only if Ordinance No. 131 effectively annexed the property—that is, if the property at issue was "within and adjacent to" the Town or part of "an existing municipality." *See* §§ 31–12–501, 24–32–109. Therefore, we may address whether Ordinance No. 131 effectively annexed the property. *See 7250 Corp. v. Bd. of County Comm'rs*, 799 P.2d 917, 921 (Colo.1990) (addressing the validity of an enabling act because, if it was invalid, the ordinance at issue would be void from its inception); *In re Annexation to City of Prospect Heights*, 111 Ill.App.3d 541, 67 Ill.Dec. 522, 444 N.E.2d 758, 759–60 (1982) (a party may defend against an attack on its annexation petition by collaterally challenging the validity of a prior petition or annexation); *cf.* § 31–12–116(4), C.R.S.2010 (an annexation may "be directly or collaterally questioned in any suit, action, or proceeding").[4]

4. Though Grandote alleges that the county has taxed its property as if all of it is within the Town, it does not contend that the Town is thereby estopped to assert that the annexation contemplated by Ordinance No. 131 was never effective. Therefore, we do not address that issue.

### B. The Annexation Contemplated by Ordinance No. 131 Was Never Effective

██ It is undisputed that two certified copies of Ordinance No. 131 (together with a map of the annexed property) were not filed with the county clerk and recorder as required by sections 31–12–113(2)(a)(II)(A) and 24–32–109. Nor is it disputed that the county clerk and recorder never filed a copy of the ordinance (again, with a map of the annexed property) with the division of local government, as required by section 24–32–109. But Grandote argues that Ordinance No. 131's annexation was effective because there was substantial compliance with the statutory filing requirements. We conclude that substantial compliance is insufficient to satisfy these statutory requirements and, even if it were, there was no substantial compliance with section 24–32–109's requirement that the ordinance be filed with the division of local government.

Whether the filing requirements of sections 31–12–113(2)(a)(II)(A) and 24–32–109 must be strictly complied with or need only be substantially complied with to render an annexation effective is an issue of first impression in Colorado. The issue is one of statutory interpretation. *See Charnes v. Norwest Leasing, Inc.*, 787 P.2d 145, 147 (Colo.1990) (determining whether strict or substantial compliance with a statute is required is a question of legislative intent; applying ordinary rules of statutory interpretation); *Amos v. Aspen Alps 123, LLC*, ── P.3d ──, ──, 2010 WL 27401 (Colo.App. 2010). Our primary goals in interpreting a statute are to ascertain and give effect to the legislative intent. *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, ── (Colo.App. 2010); *see Dep't of Transp. v. Gypsum Ranch Co., LLC*, 244 P.3d 127, 131 (Colo. 2010); *Snell v. Progressive Preferred Ins. Co.*, ── P.3d ──, ──, 2010 WL 2853754 (Colo.App.2010).

In 1984, when the Town enacted Ordinance No. 131, section 31–12–113 provided in relevant part as follows:

(1) If the conditions of subsection (2) of this section are met, area annexed to a municipality . . . shall be annexed upon the effective date of the annexing ordinance. . . .

(2)(a) The annexing authority shall:

. . .

(II)(A) File for recording two certified copies of the annexation ordinance and map of the area annexed containing a legal description of such area with the county clerk and recorder of each county affected.

. . . .

(b) No annexation shall be effective until the requirements of sub-subparagraph (A) of subparagraph (II) of paragraph (a) of this subsection (2) are met.

Ch. 275, sec. 1, § 31–12–113(1), (2)(a)(II)(A), (2)(b), 1975 Colo. Sess. Laws 1086.[5] Section 31–12–113(2)(c) provided, however, that "[i]n any action attacking the validity of an annexation proceeding, failure of the annexing municipality to have made the filings required by [subsection 31–12–113(2) ] shall not be deemed to invalidate the annexation where good cause for such failure is shown."

Section 24–32–109 provides in relevant part, as it did in 1984, that "[n]o annexation . . . shall be effective until notice of the completion of such action with a legal description accompanied by a map of the area concerned is filed in duplicate by the municipality with the county clerk and recorder of the county in which the annexation . . . takes place." It goes on to state: "[a] certified duplicate copy of any annexation . . . shall be filed with the division of local government by the county clerk and recorder of the county."[6]

Reading these two statutes together, it is clear that the county clerk is responsible for filing with the division of local government one of the certified copies of the annexation

---

**5.** Section 31–12–113(2)(a)(II)(A) was amended in 2000 to require the filing for recording of *three* certified copies of the annexation ordinance and map with the county clerk and recorder. Ch. 120, sec. 2, § 31–12–113(2)(a)(II)(A), 2000 Colo. Sess. Laws 422. Otherwise, the current version

is substantially identical to the version in effect at the time of the events at issue.

**6.** Section 24–32–109 has not been amended in any respect since 1975.

ordinance and map that the municipality must file with the clerk.[7]

There are several clear indications in these statutes that substantial compliance with the filing requirements is insufficient.

First, both statutes plainly declare that the consequence of noncompliance is that the annexation shall not become effective. *See* §§ 31–12–113(1), (2)(b), 24–32–109. This indicates an intent to require strict compliance with the filing requirements. *See In re Marriage of Slowinski*, 199 P.3d 48, 52 (Colo.App. 2008) ("The crucial difference between statutes considered discretionary and those deemed mandatory is the consequence of noncompliance."); *Town Bd. of Marshan v. City Council of City of Hastings*, 298 N.W.2d 353, 355 (Minn.1980) (strict compliance with the annexation petition statute was required where the statute specified the period in which objections to annexation petitions had to occur because the requirement was clear and unambiguous and the statute specified the consequences of noncompliance); *cf. Biggerstaff v. City of Altus*, 114 Okla. 98, 243 P. 751, 752–53 (1926) (where annexation statute stated only that the mayor should cause an ordinance and map to be filed with the applicable county, but did not specify the consequences of noncompliance, the filing requirement was merely directory and a failure to file did not affect the ordinance's validity); *see generally* 3 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 57:3, at 34, § 57:8, § 57:12, at 56 (2008).

Second, unlike the statute governing petitions for annexation, sections 31–12–113 and 24–32–109 do not now and did not in 1984 expressly allow for substantial compliance. *Compare* § 31–12–113(2), *and* § 24–32–109, *with* § 31–12–107(1)(g), C.R.S.2010 ("If the petition is found to be in substantial compliance with this subsection [further annexation proceedings shall commence]."). Because these statutes pertain to the same subject, this omission indicates that the General Assembly intended that only strict compliance would satisfy the filing statutes. *See Sinclair Mktg. Inc. v. City of Commerce City*, 226 P.3d 1239, 1243 (Colo.App.2009) (the omission of a provision in one statute that is included in another similar statute suggests the omission was intentional); *Deutsch v. Kalcevic*, 140 P.3d 340, 342 (Colo.App.2006) (same).

Third, the presence of an explicit good cause exception in subsection 31–12–113(2)(c) suggests that the General Assembly intended that only a showing of good cause would excuse strict compliance with that statute. *See In re Marriage of Chalat*, 112 P.3d 47, 57 (Colo.2005) (where the General Assembly provides exceptions to a statutory requirement, the court "must presume that the General Assembly, having chosen to speak with such exactitude, did not intend any implied exceptions"); *Lang v. Colo. Mental Health Inst.*, 44 P.3d 262, 264 (Colo.App.2001) ("An exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted and excludes all other exceptions."); *see also Pearson v. Dist. Court*, 924 P.2d 512, 516 (Colo.1996) (the use of negative, limiting statutory language suggests a mandatory, not directory, construction).[8]

Therefore, we conclude that the filing requirements of sections 31–12–113(2)(a)(II)(A) and 24–32–109 may not be satisfied by mere substantial compliance. *See Johnston v. City Council*, 189 Colo. 345, 347, 540 P.2d 1081, 1082 (1975) (stating, in the context of assessing the validity of an annexation ordinance: "The annexation statutes are more than mere formalities. Either annexation proceedings are conducted with strict compliance or they become a complete nullity."); *cf. Bd. of County Comm'rs v. City & County of Denver*, 190 Colo. 347, 350–51, 547 P.2d 249, 251–52 (1976) (the statutory requirement that an annexation ordinance "shall not be-

---

**7.** This intent is further borne out by the 2000 amendment to section 31–12–113(2)(a)(II)(A) requiring the municipality to file three certified copies of the annexation ordinance and map with the county clerk. That amendment was made in conjunction with another requiring the clerk to file one of the certified copies with the department of revenue. Ch. 120, sec. 2, § 31–12–113(2)(a)(II)(B), 2000 Colo. Sess. Laws 422.

**8.** Grandote has never alleged that there was any good cause here.

come effective prior to court approval as specified in [former] section [139–21–19]" was mandatory, not procedural; to hold otherwise would result in a judicial repeal of the statute); *Gavend v. City of Thornton*, 165 Colo. 182, 186–87, 437 P.2d 778, 779–80 (1968) (where the statute clearly mandated that no property in a school district could be annexed without the board of education's written consent, annexation proceedings that only substantially complied with this requirement were null and void); *Hiwan Ranch v. City of Lakewood*, 31 Colo.App. 471, 473–74, 505 P.2d 16, 17 (1972) (statute requiring landowner's consent to annexation could not be satisfied by mere notice to landowner of intended annexation); *Town of Miami v. City of Globe*, 195 Ariz. 176, 985 P.2d 1035, 1039–40 (Ariz.Ct.App.1998) (requirements that annexation petitions must be signed by at least one-half of property owners and that the parcel to be annexed may not be more than twice as long as it is wide are either met or they are not, and therefore substantial compliance is insufficient to satisfy those requirements); *Gregg v. Whitefish City Council*, 323 Mont. 109, 99 P.3d 151, 157 (2004) (annexation statutes that call for subjective value judgments or the exercise of discretion are satisfied by substantial compliance; otherwise, the procedural requirements of annexation statutes must be strictly complied with); *State ex rel. Watkins v. Quirk*, 59 Ohio App.2d 175, 392 N.E.2d 1302, 1308 (1978) (statute requiring ordinance petitions to be filed with the city auditor or village clerk was mandatory and could not be satisfied by substantial compliance); 2 Eugene McQuillin, *Municipal Corporations* § 7:39.21 (3d ed. 2007) ("[S]ometimes a strict observance [of annexation statutes] is necessary.").

■ Accordingly, because the required filings of Ordinance No. 131 did not occur, and because no good cause was shown (or even alleged) for the failure, the annexation contemplated by Ordinance No. 131 did not become effective.[9]

We are not persuaded otherwise by Grandote's reliance on *Board of County Commissioners v. City of Aurora*, 62 P.3d 1049 (Colo. App.2002). In that case, a division of this court concluded that an annexation was not rendered invalid where the contents of a statutorily required annexation impact report immaterially varied from the required contents. *Id.* at 1053–54. Unlike sections 31–12–113 and 24–32–109, the statute in that case did not state the consequence of noncompliance with the content requirement. Nor, unlike section 31–12–113, did it specify any conditions under which strict compliance would be excused. *Compare* § 31–12–108.5, C.R.S.2010, *with* § 31–12–113(2).

Further, complying with section 31–12–108.5 required the municipality to use its judgment to determine what was "in the vicinity of" the area to be annexed, to create a plan for services in the area, and to otherwise describe the area proposed to be annexed. *See* § 31–12–108.5; *City of Aurora*, 62 P.3d at 1054. The relevant statutes here, in contrast, clearly set forth the precise filing requirements. *See* §§ 31–12–113(2)(a)(II)(A), 24–32–109; *cf. City of Aurora*, 62 P.3d at 1054 (because the city's plans for the annexed property were still in development, the court excused the impact report noncompliance because it would have been a "futile gesture" for the city to include information it did not have).

■ Alternatively, even if we assume that substantial compliance with sections 31–12–113 and 24–32–109 may render an annexation

**9.** To the extent Grandote suggests that Ordinance No. 131's purported annexation was effective either because the Town would not have enacted Ordinance No. 144 had it believed that the annexation was ineffective, or because Ordinance No. 144 purported to "disconnect" the property, we note that an ineffective annexation cannot be made effective simply by later reliance on or an assumption of its effectiveness. *See Johnston*, 189 Colo. at 347, 540 P.2d at 1082 (voiding an attempted reaffirmation of a void annexation ordinance because "[t]here can be no breathing of life into an invalid ordinance by *ex post facto* patchwork"); *Gavend*, 165 Colo. at 187, 437 P.2d at 780 (where an ordinance was invalid when it was passed, no later action by the board of education to cure the defect could make the ordinance valid). We also note that Ordinance No. 131, though not effective, had been validly enacted. Therefore, repealing it was necessary to clear it from Town ordinance compilations and to render it incapable of being made effective by later filings.

effective, we conclude that here there was not substantial compliance with section 24–32–109's requirement that a certified copy of the ordinance (and map) be filed with the division of local government.[10]

■ To determine whether there has been substantial compliance with a statute, we consider whether the allegedly complying acts fulfilled the statute's purpose. *See Meyer v. Lamm*, 846 P.2d 862, 876 (Colo.1993) (recognizing the purpose of two voting statutes in determining whether they were substantially complied with); *Woodsmall v. Reg'l Transp. Dist.*, 800 P.2d 63, 67–68 (Colo.1990) (the purpose of a statute's notice requirements was, in part, to permit a public entity to defend against a claim; therefore, to determine whether substantial compliance had occurred, the court considered to what extent the public entity's ability to defend itself was adversely affected); *People v. Stanley*, 169 P.3d 258, 261 (Colo.App.2007) (substantial compliance is " 'actual compliance in respect to the substance essential to every reasonable objective of the statute, as distinguished from mere technical imperfections of form' " (quoting *People v. Jacobs*, 43 Cal.3d 472, 233 Cal.Rptr. 323, 729 P.2d 757, 763–64 (1987))); *see also Bd. of County Comm'rs v. City & County of Denver*, 193 Colo. 325, 328, 566 P.2d 335, 337–38 (1977) (statutory requirement that a map and a school board resolution accompany an annexation petition was substantially complied with where the map and resolution were available to the city council when it considered the petition).

The General Assembly created the division of local government for several reasons, including to "provid[e] coordination of state services and information to assist local government in effectively meeting the needs of Colorado citizens." § 24–32–101(1)(d), C.R.S. 2010. The division fulfills this purpose, in part, by recording all changes to municipal boundaries and maintaining maps of all municipalities as public records. *See* § 24–32–

108, C.R.S.2010. Section 24–32–109's requirement that a certified copy of every annexation ordinance be filed with the division of local government therefore enables the division to maintain accurate information about municipal boundaries as required by section 24–32–108. Thus, that requirement cannot be deemed a mere formality: excusing noncompliance with the requirement would not result in fulfillment of the relevant statutes' purposes. *See Meyer*, 846 P.2d at 876; *cf. City of Lenexa v. City of Olathe*, 233 Kan. 159, 660 P.2d 1368, 1373 (1983) (where the statutorily required publication erroneously described the property to be annexed, though the owners of the subject land were aware of the correct description, there was no substantial compliance because the publication requirement was intended to provide notice to the general public); *Johnson v. Sandy City Corp.*, 28 Utah 2d 22, 497 P.2d 644, 645–46 (1972) (filing an ordinance with the county clerk three years after the ordinance was adopted did not substantially comply with the filing statute because the statute sought to ensure that filings were made as soon as possible after the annexation was enacted).[11]

Because we conclude that, under the undisputed facts, Ordinance No. 131's purported annexation did not become effective as a matter of law, we affirm the district court's judgment.

Judgment affirmed.

Judge WEBB and Judge GRAHAM concur.

---

10. Grandote argues that there was substantial compliance with section 31–12–113(2)(a)(II)(A) because one of the two required certified copies was filed. But Grandote does not argue that there was substantial compliance with section 24–32–109's requirement of filing a certified

copy of the ordinance with the division of local government.

11. We express no opinion whether the Town substantially complied with section 31–12–113(2)(a)(II)(A).